MONROE, J.
Plaintiff, asserting title to, and possession of, certain lands which form part of the low peninsula of the parish of St. Bernard which projects into the waters constituting Mississippi Sound and the Gulf of Mexico, complains that the Oyster Commission of Louisiana and its (alleged) licensees, the E C. Joullian Canning Company and Dunbars and Lopez & Dukate Company, have been, and are, slandering said title “and possession,” trespassing upon the property, carrying away oysters and shells therefrom, and interfering with it (petitioner) in the development and use of the same, and its petition concludes with the prayer that the parties named be cited, and, further:
“That, the annexed affidavit and bond considered, a preliminary injunction issue, injoining and restraining them, their agents and employes, aid all other parties who may be discovered slandering petitioner’s possession or title, or trespassing on petitioner’s property and the said places known as Creole Gap' and Grand Pass, aforesaid, and from interfering with the full enjoyment of the said property by your petitioner and the employment of the said steamboat Carrie, her officers and crew, and petitioner’s employés, and from attempting to lease, grant, or license, to others, for fisheries or other purposes, the said places or property, situated within petitioner’s survey, as described in petitioner’s title. That the said parties defendant may be ordered to account to petitioner for the oysters in the shell taken away from said property, and that petitioners have judgment for the amount shown to be due petitioner by said account. Petitioner further prays that there be judgment * * * against the said defendants, the Oyster Commission of Louisiana and the E. C. Joullian Canning Company in solido for damages, actual and exemplary, for said joint trespass of the said parties, in the sum of $6,000, as above set forth, and maintaining and making perpetual the preliminary injunction against said defendants and all others found questioning, impeaching, and slandering petitioner’s possession and title or trespassing upon petitioner’s said property, as described by petitioner’s title and patents and the government surveys, and against all parties in solido for costs and general relief.”
The preliminary injunction issued as prayed for, on a bond of $2,500, and thereafter the defendants excepted, on the grounds that the petition was too vague and indefinite in its allegations, and that it disclosed no cause of action, and the Oyster Commission further excepted that:
, “The suit is an attempt, on the part of plaintiff, to stop and prevent, by the civil process of injunction, the execution and enforcement of the criminal laws of the state * :'f * which it is the duty of this appearer to enforce.”
Defendants then moved that the injunction be set aside, or the amount of the bond increased, and plaintiff moved that the motions so filed be taken as answers, and, both motions having been disposed of adversely to the movers, there was judgment on the exceptions as follows:
“It is ordered that the said exceptions be maintained in so far as to order the plaintiff to amend its petition, within five days, by setting forth more clearly and definitely the description of the property referred to in its petition, and that upon failure to comply with this order * * * plaintiff’s suit be dismissed, as in case of nonsuit, at its cost; in other respects the said exceptions are overruled.”
Thereafter, plaintiff filed a supplemental petition, annexing and making part thereof certain patents and other muniments of title, as in compliance with the order that it should set forth more clearly and definitely the description of the property referred to in its petition, and defendants, thereupon, renewed the exception of “no cause of ac *743 tion,” which was sustained by a judgment which rejects plaintiff’s demand and dismisses its suit, and from which plaintiff prosecutes this appeal. The petitions are rather long and we Shall, therefore, and in order to determine whether they disclose a cause of action, copy only those parts which purport to describe the property trespassed upon— stating, as well as we can, the substance of the other allegations;
In the original petition, it is alleged:
“That petitioner * * * is_ the owner and in possession of certain lands, in the parish of St. Bernard, * * * on the coast line, bounded on the north by the waters described as the Mississippi Sound, or Grand Pass of the Gulf of Mexico, all acquired by petitioner by mesne conveyance from the state of Louisiana; that the said lands are submerged and swamp and overflowed lands and embrace the places known as Creole Gap, in Sec. 32, T. 10 S., R. 20 E., and Secs. 4 and 5, T. 11 S., R. 20 E., of the official plat of survey of said lands in the United States and state land offices, and other water bottoms, in the limits of petitioner’s survey, extending across, at the extreme western end of petitioner’s land, to the western section lines of sections 6 and 7, embracing the place, or small pass, known as Grand Pass, in the said sections 6 and 7, in T. 11 S., R. 20 E., as distinguished from Grand Pass of the Gulf of‘Mexico, aforesaid ; the said land extending southerly or southwesterly to a place designated as Drum Pass, and comprising about 6,809 acres.”
The petition then goes on to state that-the lands in question were donated by the United States to the state, accepted by the state, and sold to petitioner’s author as swamp and overflowed lands; “that petitioner has been in possession, as owner and by title, for more than 30 years, through the author of its title, and, for more than 10 years, by just title”; that it has gone to great expense in developing the property, and has operated a steamboat, known as the “Carrie,” in that connection ; that the Oyster Commission of Louisiana, and its licensees the E. C. Joullian Canning Company and the Dunbars and Lopez & Dukate Company, and other parties unknown, have slandered its title, and have combined to take physical possession of the property; that boats owned by the said parties, or in which they are interested, have taken oysters therefrom, and owe an accounting therefor; that the Dunbars and Lopez & Dukate Company applied for a lease of said property; that the Oyster Commission, by threats of arrest and imprisonment and criminal prosecution, under color of Act 52 of 1904 and Act 178 of 1906, attempt to intimidate petitioner from pursuing the business for which it was organized; that its ownership of the property was notorious, and that it placed signs thereon giving further notice to that effect; that the Oyster Commission, its president, agents, or employes, on or about November 27, 1908, entered upon said property and cut down -and carried away said signs, and ordered its licensee the Joullian Company and other parties to continue fishing and carrying off petitioner’s property, and that said company so continues; that said acts constitute a joint trespass by said parties, for which they are liable in solido, and which prevents the peaceful occupation, by petitioner, of said land; that said lands are valuable for fisheries or reclamation; that petitioner has paid all taxes thereon; and that the use thereof is worth more than $25,000; that said lands and petitioner’s business are not subject to the license taxes, restrictions, penalties, prohibitions, forfeitures, etc., imposed' by the said acts of 1904 and 1906; that petitioner has been damaged by the acts of the defendants in the sum of $5,000, and is entitled to $1,000 by way of exemplary damages, and that said acts will be continued unless prohibited by injunction; that the provisions of the acts of 1904 and 1906 do not conflict with petitioner’s rights; but, should it be so considered, then that they contravene section 10, art. 1, of the Constitution of the United States, as also certain provisions of the state Constitution (which are specified). Wherefore, petitioner prays, etc. (as hereto *745 fore set forth). The supplemental petition alleges:
“That, in obedience to the order of the court, * * * plaintiff files herewith a description of the property of petitioner, as originally derived by its authors from the state of Louisiana and conveyed to, or acquired by mesne conveyance by, petitioner, and comprising the northeast extremity, or end, of the peninsula of St. Bernard, as outlined and defined in the ‘Boundary Case,’ between the states of Louisiana and Mississippi, * * * establishing the boundary between the two states; that the said part of said peninsula is also known as ‘Isle a Pitre,’ or the ‘Louisiana Coast Line,’ the said decision showing the ‘thalweg,’ or boundary to run between the said Isle it Pitre and Cat Island. Petitioner shows that its possession embraces the whole of the territory known as the ‘Isle a Pitre,’ and the lands described in the annexed transfer, made part hereof; that the said sections and fractional sections of land, or upland, and land under water, therein set forth, adjoin and form one piece, or block, of swamp and overflowed land, continuously, or diagonally, in the sections, or fractional sections, described, through T. 10 S., R. 20 E., T. 11 S., R. 20 E., and into T. 12 S., R. 20 E., and Sec. 13, in T. 11 S., R. 19 E., all in the Southeastern, East of River, land district, parish of St. Bernard, of which plaintiff holds possession, as set forth in the said several patents and mesne conveyances, as will fully be shown on the trial of this case; that petitioner files herewith a plotted diagram of the whole of said property and a copy of a map of the State Land Office of the said T. 10 S., R. 20 E., * * * showing the said islands and portions of said land in said T. 10 S., R. 20 E., and the United States Coast Survey chart, No. 190, issued November, 1887, and refers to the several maps or charts contained in the transcript and report of the decision of the said ‘Boundary Case,’ 202 U. S. p. 1 [26 Sup. Ct. 408, 571, 50 L. Ed. 913] et seq., showing in detail the location of the places known as ‘Creole Gap,’ in T. 10 S., R. 20 E., and T. 11 S., R. 20 E., and ‘Grand Pass,'’ in T. 11 S., R. 20 E., lying within the limits and area of petitioner’s survey, and the said patents, showing the boundaries of said property and petitioner’s possession and enjoyment of the said property, together with, all the rights of accretion, advantages and appurtenances thereunto belonging,” etc. “Wherefore, petitioner prays” (as in the original petition).
There is annexed to this petition an act, under private signature, of date October 10, 1894, whereby L C. Gilmore, “for valuable consideration,” sells and transfers to the Louisiana Navigation Company all his right, title, and interest in the following described lands, to wit:
“Certain lands situated in the Southeastern land district of Louisiana, in the parish of St. Bernard, embracing the whole of the island known as ‘Isle á Pitre,’ and other lands, viz.:”
First. The fractional sections Nos. 23, 24, 25, and 20, in township 10 S., range 20 E., containing 468.78 acres.
Second. The fractional sections 33 and 34, in township 10 S., range 20 E., containing 569.72 acres.
Third. The fractional sections Nos. 27, 28, and 32, in township 10 S., range 20 E., containing 380.40 acres.
Three islands in sections 20, 21, 28, in township 10 S., range 20 E., containing 51.40 acres.
The fractional W. % of section 4, and fractional N. E. 14 of section 5, in township 11 S., range 20 E., containing 276 acres.
The fractional sections 5, 6. 7, and 8, S. W. 14 of section, 18; N. E. 14 of N. W. 14 of section 19; and W. 14 of section 31 — in township 11 5., range 20 E., containing 990 acres.
All of fractional section No. 13 in township 11 S., range 19 E., containing 320 acres.
The east fractional 14 of N. W. 14 of section 4, township 11 S., range 20 E., containing 33 acres.
The S. V> of N. W. 14 of section 5-; E. % of E. 14, and S. W. 14 of S. E. 14 of section 6; N. E. 14 ; N. % of S. E. 14 section 7; and N. W. 14 of section 8 — in township 12 S., range 20 E„ containing 1,008 acres.
The W. % of the N. E. 14 and E. % of section 6, township 12 S., range 20 E., containing 160 acres.
All of section 20, township 11 S., range 20 E., containing 640 acres.
The W. % of S. W. 14 of section 19; W. % of section 29; E. % of section 30; E.. % of section 31; and W. V2 of section 32, — township 11 5., range 20 E., containing 1,840 acres, “together with all the rights of accretion, rights, ways, advantage and appurtenances thereto belonging,” etc.
The descriptions thus given (in the act of transfer in question) are taken, with some inaccuracies, from patents, also annexed to the petition, issued by the state of Louisiana, most of them to plaintiff’s transferror, but several to other persons, and all of them reading that the lands are sold “according to the official plat of the survey of the said lands in the State Land Office.” The survey referred to seems to have been made in 1845, and, from the copies which plaintiff has filed, aided by an unofficial plat of later date, *747 also filed by plaintiff, we have prepared the subjoined sketch, upon a reduced scale, which, with no pretentions to absolute accuracy, may be of some assistance. On the official copy, from which it was mainly taken, the section and township lines, so far as they go, are all dotted, and some of them, including those which traverse the extreme point of land, at the top of the sketch, are in red ink (indicating as we understand it, that they are not to be found on the original). “Creole Pass” (by that name) does not appear on any of the plats, but the name “Little Bayou Pore” is given on the unofficial sketch to a bayou extending across the line between townships 10 and 11, and, as Creole Pass is described in the supplemental petition as being in these townships, it may be that “Little Bayou P8re” is another name for it. We find that, on one of the plats incorporated in the transcript of the record in the case of the State of Louisiana v. State of Mississippi (which we are invited to consider), the whole of the land, extending (according to the annexed sketch) between the points which we have designated as A and B, respectively, is called “Isle h Pitre,” and, in some of the plats in the same transcript, the body of water lying to the nortlrward of Isle á Pitre is called “Mississippi Sound.”
Opinion.
The position of the plaintiff, as developed in the argument of the case, is that its patents to fractional sections carry with them title to all the land in the sections, submerged as well as dry, and (from the argument) we understand its particular complaint to be that the Oyster Commission, and its licensees, have been, and are, interfering with its use and enjoyment of the submerged portions of the sections in question (especially those lying beneath the waters of Creole Pass and Grand Pass) by removing oysters therefrom, and by threatening it (plaintiff) with the penalties of the law for dealing with those lands as its own.
Counsel for the Oyster Commission relies upon two grounds in support of his exception (of no cause of action). He says, in his brief:
“The first ground is that, this being a suit to test the title of lands claimed both by the plaintiff and the state, the Oyster Commission, being, merely a department of the state government charged with certain functions, cannot stand in judgment in a suit concerning the title, that belonging to the state ; and the state, therefore, is the only party who could try this question with the plaintiff.”
The other ground (relied on by all the defendants) is, that the submerged lands are not included in plaintiff’s patents and that, having exhibited those muniments of title, as part of its allegation of possession, as owner, plaintiff has put itself out of court.
Considering the ground first stated, it would hardly do to say that, because an alleged trespasser is without capacity to stand in judgment with respect to the title to the property trespassed on, the party claiming to be in possession, as owner, has no standing to protect such possession.
What the court decided in the Ohauvin Case was that the plaintiff, having enjoined the Oyster Commission from trespassing upon and interfering with his enjoyment of lands claimed by him, and having exhibited a patent from the state which embraced the lands so claimed, the Oyster Commission had no standing to attack the title so exhibited. Chauvin v. Oyster Commission, 121 La. 10, 46 South. 38.
' The other ground relied on presents the question whether the patents exhibited by the plaintiff now before the court conveyed the property which plaintiff is seeking to protect, or whether that property is part of the public domain, the administration of which is vested in the Oyster Commission. For the support of their view of this question, counsel for plaintiff cite decisions of the Supreme *751 Court of the United States, of the Supreme Courts of Indiana and Michigan and of the English Courts, all interpreting and applying the common law as administered in England, and, possibly, as administered in some of the states mentioned, and all dealing with cases essentially different from that here presented. According to the common law of England, there is no navigable water save that which is within the ebb and flow of the tide, and a grant of land bordering upon a nonnavigable stream carries the title to the middle thre'ad of the stream. In this country, however, all streams are navigable, in the legal sense, which are navigable in fact, and, by the concurrence of all. authority, grants of land bordering upon navigable streams or tide water carry the titles no further than high-water mark. This question was considered in the case of Packer v. Bird, 137 U. S. 661, 11 Sup. Ct. 210, 34 L. Ed. 819, in which, Mr. Justice Field, as the organ of the Supreme Court of the United States, said:

*749

*751 “It is undoubtedly the rule of the common law that the title of owners of land bordering upon rivers above the ebb and flow of the tide extends to the middle of the stream, but that, where the waters of the river are affected by the tides, the title of such owners is limited to ordinary high-water mark. * * * In England, {his limitation of the right of the riparian owner is confined to such, navigable «rivers as are affected by the tides, because, there, the ebb and flow of the tide constitute the usual test for the navigability of the stream. * * * In this country, the situation is wholly different. Some of our rivers are navigable for many hundreds of miles above the limits of tide water, and, by vessels larger than any which sailed upon the seas when the common-law rule was established. A different test must, therefore, be sought to determine the navigability of our rivers, with- the consequent rights both of the public and the riparian owner, and such test is found in their navigable capacity. Those rivers are regarded as public, navigable rivers which are navigable in fact, and, as said in The Daniel Ball, 77 U. S. (10 Wall.) 557, 19 L. Ed. 999, they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce over which trade and travel are or may be conducted, in the customary modes of trade and travel on water.”
Quoting from another ease, the learned justice proceeds:,
“We are aware that, by the common law of England, such streams as the Mississippi, the Missouri, the rivers Amazon and Platte, the Rhine, the Danube, the Ganges, the Nile, and the Indus were not navigable rivers, but were the subject of private property, whilst an insignificant creek, in a small island, was elevated to the dignity of a public river, -because it was so near the ocean that the tide ebbed and flowed the whole of its petty course. The Roman law, which has pervaded Continental Europe, and which took its rise in a country where there was a tideless sea, recognized all rivers as navigable which were really so, and this common-sense view was adopted by the early_ founders of Pennsylvania, whose province was intersected by large and valuable streams, some of which are a mile wide.”
And the question at issue (whether a grant of land, described as bordering on the Sacramento river, carried the title to the middle of the stream and included an island) was decided in the negative. The learned counsel quote freely from the opinion of the court in the case of Hardin v. Jordan, 140 U. S. 406, 11 Sup. Ct. 808, 838, 35 L. Ed. 428, in which the main question was whether United States patents to certain fractional sections of land, lying upon the borders of a small fresh- water lake or pond, in Illinois, carried the titles to the «middle of the lake. It was held (three- of the justices dissenting) that they did, but Mr. Justice Bradley, as the organ of the court, in the course of the opinion handed down by him said:
“This is an action * * * to recover possession of certain fractional sections of land lying on the west and south sides of a small lake, in Cook county, Illinois, situated about a dozen miles south from Chicago and two or three miles from Lake Michigan, and, also, to recover the land, under water, in front of said fractional sections, and land from which the water retires at low water. The lake is two or three miles in extent, and the- main question in the cause is, whether the title of the riparian owner, on such a lake, extends to the center of the lake, or stops at the water’s edge.”
Proceeding to consider the question thus stated, the court found that the survey upon which the patents issued, “not only laid down meander lines next to the lake, but also de *753 scribed said lines as running along tbe margin of tbe lake” ; that the plat of survey exhibited the granted tracts as actually bordering upon the lake, which, though marked with the words “Navigable Lake,” was, in fact, but a nonnavigable, fresh water pond, and that the grant was made according to said plat; and the opinion proceeds:
“Such being the form of the title granted, * * * the question is as to the effect of that title, in reference to the lake front of the lands actually described in the grant. This question must be decided by some rule of law, and no rule of law can be resorted to for the purpose except the local law of the state of Illinois.”
The learned justice then finds that “the common law is the true and only law of Illinois on the subject of land titles”; that, at common law, the question, What will pass by a grant bounded by a stream of water? depended upon the character of the stream, or water.
“If it were a navigable stream or water, the riparian proprietor extended only to high-water mark. If it were a stream not navigable, the rights of the riparian proprietor extended to the center of the thread of the current. * * * At common law, only arms of the sea and streams where the tide ebbs and flows are deemed navigable. To those, riparian'proprietors, bounded on or by the river, could acquire exclusive ownership in the soil, water, and fishery, to the middle thread of the current, subject, however, to the public easement of navigation.”
It was then held that the same common-law rule applied to fresh water lakes and ponds. Differentiating such cases, however, from those where the grant is of land on navigable or tide water, the opinion reads:
“With regard to grants of the government for lands bordering upon tide water, it has been distinctly settled that they only extend to high-water mark, and that the title to the shore, and land under water in front of lands so granted, inures to the state within which they are situated, if a state has been organized and established there. Such title to the shore and lands under water is regarded is incidental to the sovereignty of the State, and cannot be retained or granted out to individuals by the United States. * * * Such title being in the state, the lands are subject to the state regulation and control, under the condition, however, of not interfering with the regulations which may be made by Congress with regard to public navigation and commerce. The state may even dispose of the usufruct of such lands, as is frequently done, by leasing oyster beds in them and granting fisheries in particular localities; also, by the reclamation of submerged flats and the creation of wharves and piers and other adventitious, aids to commerce.”
By the express terms of the act of Congress by which Louisiana was admitted to the Union, the Mississippi river and the navigable rivers leading into the same and into the Gulf of Mexico were declared to be common highways, to be kept forever free to the inhabitants of the state and of other states and territories of the United States (Stat. at Large, vol. 2, pp. 642, 703; Boykin v. Shaffer, 13 La. Ann. 130); and the Civil Cod,e provides that:
“Public things are those the property of which is vested in the whole nation, and the use of which is allowed to all members of the nation; of this kind are navigable rivers * * * and the beds of rivers so long as the same are covered with water.” C. C. 453.
Hence, there can be no such thing in this state as private ownership of the bed of a navigable, river, and a fortiori can there be no such thing as private ownership of the bed of the sea or of an arm of the sea. In a case decided many years ago, this court (referring to certain land lying beneath the waters of Lake Ponchartrain and claimed by the plaintiff) said: “It appears to us that the testimony shows fully the ground in question lies much below high-water mark and forms part of the bed of the lake, and is not, therefore, susceptible to private ownership.” Milne v. Girodeau, 12 La. 325. And, to the same effect, was the decision in Zeller v. Yacht Club, 34 La. Ann. 837. It has, moreover, been held by this court that the sale, at a fixed price, per acre, of fractional sections of swamp or overflowed land, bordering upon shallow, nonnavigable lakes, entitles the purchaser to the number of acres that he buys and pays for, and conveys no> right to the submerged land not thus ac *755 counted for. McDade v. Bossier Levee Board, 109 La. 625, 33 South. 628; Hall v. Board, etc., 111 La. 913, 35 South. 976.
We conclude, then, that the grants under which plaintiff claims — being of land bordering upon, and partially surrounded by, the tide water of the Gulf of Mexico — carry its titles no farther than high-water mark, and that, in so far as it (plaintiff) asserts ownership and possession, under such titles, of land lying beneath the waters which surround the tracts of dry land included in said grants, or, lying beneath any navigable passes, or channels, which intersect such tracts or separate them from each other, the exception, of no cause of action, was properly maintained. It does not follow, however, that the petition, taken as a whole, fails to disclose a cause of action, since, its allegations are broad enough to import a charge of trespass with resiiect to the dry, as well as the submerged, land, and though the charge is not as specific as the defendants have a right to require and the trial judge to order, it cannot properly be said that it does not show a cause of action. Moreover, it seems not unlikely that there may be non-navigable streams, pools, ponds, and wet places, so insignificant in dimensions and so within the borders of the dry land covered by plaintiff’s grants as that plaintiff would be entitled to hold them, as included therein (see Burns v. Crescent, etc., Club, 116 La. 1038, 41 South. 249), and yet, with respect to which, defendants may entertain a different opinion and may hereafter insist that the judgment appealed from constitutes res'judicata.
We think, therefore, that plaintiff should be again afforded an opportunity to amend its petition (within a delay to be fixed by the judge a quo), by setting forth, specifically, the particular places, or portions of its property, upon which the alleged trespass has been committed, together with the time and manner of the trespass. As the case is presented, the location of Creole Pass is a matter of guesswork, and we are not informed, even by an allegation, whether either of the passes mentioned in the petition is navigable or otherwise. It is, therefore, ordered, adjudged, and decreed that the judgment appealed from be set aside, and that this case be remanded to the district court, to be there proceeded with in accordance with the views expressed in this opinion, the costs of the appeal to be paid by defendants and those of the district court to await the final judgment.
PROVOSTY, X, dissents.