### Same Case—On a Re-hearing.

By an act of 28 March, 1839, for expediting the construction of the Clinton and Port Hudson Rail Road, it was provided (sec. 2,) that certain bonds of the State should be loaned to the company, on condition that it should agree, " in case said bonds, and the interest thereon, are not punctually paid according to the provisions of this act, that the rail road constructed by the company shall, by the mere failure to pay said bonds (or either of them, s. 4,) and the interest thereon, and the payment thereof by the State, become the property of the State." An act of March 8, 1841 after reciting that the bonds so loaned had been sold by the company, and that a portion of the first instalment of interest on said bonds is due and unpaid, and that the company is unable to pay the same, directs (s. 1,) the treasurer of the State to pay the interest

Perry and another v. Commissioners of the Clinton and Port Hudson Rail Road Co.

so due; and declares, (s. 2,) " by virtue of the second and fourth sections of the act of 1839, the said road, with all the machinery, fixtures, slaves and appurtenances thereunto belonging or appertaining, to be forfeited to the State." *Held,* that so much of the act of March 8, 1841, as declares the road, with the machinery, fixtures and slaves, forfeited to the State, is unconstitutional, and confers no right whatever on the State ; and that the question whether there has been a forfeiture or not, is one for judicial enquiry and decision.

The powers and duties of the commissioners appointed by the Governor to liquidate the affairs of the Clinton and Port Hudson Rail Road Company, under the act of 26 March, 1842, ch. 159, are defined by the second section of the act, which declares that the liquidation of its affairs shall be conducted according to the provisions of the act, " to provide for the liquidation of banks," of 14th March, 1842, ch. 98.

So much of the sixth section of the act of 25 March, 1844, ch. 83, as directs the treasurer of the State to sell the property, privileges and immunities of the Clinton and Port Hudson Rail Road Company, was enacted under the erroneous impression that the property and privileges of the Company were legally vested, by forfeiture, in the State. The Legislature had no power to direct the sale of the property.

THIS case was re-heard under the circumstances stated in the opinion delivered by,

GARLAND, J. When this case was before us last, (ante p. 404 *et seq.*) we stated the facts very fully, and suggested some of the questions likely to arise out of it. We then remanded the cause to have the state officers made parties, and the questions involved decided contradictorily with them, the State having a deep interest in those questions. When this judgment was rendered, the attorney general came into court, and entered an appearance, as taking a part in the appeal; and all parties agreed that our former judgment, remanding the cause, should be set aside, and that this court should consider all the questions proper to be decided in the present state of the case.

In conformity with this understanding, we have again turned our attention to the facts, and the legal questions presented by them, and are of opinion that it will not be proper for us to decide more than three questions. The first is, what power or authority the Legislature of the State had to declare, by legislative enactment, the property of the Clinton and Port Hudson Rail Road Company forfeited, and to be vested thereby in the State ? Secondly, what right the commissioners became vested with by the State's forfeiting the charter of the company, and appointing commissioners to liquidate its affairs ? And thirdly, what authority the Legislature had, after placing the property of

the corporation in the hands of the commissioners, to take away a part of it, and to direct it to be sold by the treasurer, for the sole benefit of the State?

1. The government of this State is divided into three distinct departments, each separate from, and independent of the other in its action. To the legislative department is entrusted the power of making the laws, and providing for the common benefit and general welfare of the people. That department can make laws and repeal them; but, in doing so, it cannot take from a citizen the rights he may have acquired under a particular law; nor can it assume the duties and power of the judicial department, and decree or adjudge how the law shall be administered in relation to a particular right. It can say, for what breaches of its enactments, or for what omissions of duties imposed, fines and forfeitures shall be incurred; but it has no right to try a case, on an allegation of a breach of what the law requires, or of the non-performance of an obligation or contract, and to decide the case in favor of the State, or against it, and then execute its own decree. The duty of interpreting the laws made by the Legislature, belongs to the judicial department; and it is that alone which has authority to examine and decide when a civil or penal obligation has been violated or disregarded, and to give the judgment necessary in the premises, with such orders and process as may be necessary to give the decree force and effect. It declares in what cases a fine shall be imposed, or a forfeiture incurred; and the Legislature has no right, after it has said that an infraction of a particular obligation shall be followed as a penalty by a forfeiture, subsequently to try the case, decide it, and execute its decree.

To have a forfeiture declared, there must be an investigation and examination, whether there has been a violation of law, or of a conventional agreement. The laws of the State say that, for certain infractions of them, a forfeiture of goods shall follow (B. and C's. Dig. pp. 455, 457); yet, we suppose, it would shock the common understanding of every man in the community, if the Legislature were, by enactment, to decree that a forfeiture had been incurred, and at once take possession of the property.

By the common law, where lands are forfeited for the person-

al offence of the party, no title vests in the sovereign until the offence is ascertained by conviction and attainder. Before that time the party is entitled to the possession and profits of his lands, and may alienate them, and convey to the purchaser a complete and legal, though defeasible, seizin. 1 Gallison, C. C. R. 26. 7 Cranch, 603. The same doctrine is, in general, true as to forfeitures of goods and chattels; and a forfeiture attached to a thing, conveys no property to the government in the thing, until seizure made or suit brought.

In some of the States of the Union, aliens cannot hold land; and when there is no heir who is a citizen, the real estate is forfeited to the State, as an escheat. But in such cases no title passes to the State until there is an inquisition of office, as the common law authors call it. In the case of *Fairfax' Devisee* v. *Hunter's Lessee* (7 Cranch, 619), the Supreme Court of the United States said, that, an alien has capacity to take and hold lands until an inquest of office, and until they are seized by the sovereign. The title is not divested until office found. 3 Wheaton, 594. The State of Virginia assumed as a fact, that the lands of Lord Fairfax, within that commonwealth, had escheated to the State, and consequently granted a part of them to Hunter; but the court said, he had no title, as no inquest of office had ever taken place, and the title was not vested in the State. In other States, and in England, this doctrine is well settled, and the "inquest of office" understood. It is an enquiry made by the State's or King's officer, the sheriff, coroner, escheator, *virtute officii*, or by writ sent to them for the purpose, or by commissioners specially appointed. There are various kinds of inquests, among which is the judicial writ *ad inquirendum*, which is to have an enquiry by a jury touching a cause in court. And it is a matter of congratulation with English lawyers and judges, that "it is a part of the liberties of England, and greatly for the safety of the subject, that the king may not enter upon, or seize any man's possessions upon bare surmises, without the intervention of a jury." Gilb. Hist. Exch. 132.

In this case it was enacted, "that in case said bonds and the interest thereon are not paid punctually, according to the provisions of the act, *the rail road constructed by said company* shall,

by the mere failure so to pay said bonds, and the interest thereon, *and the payment thereof by the State,* become the property of the State." This enactment requires two things before the right of property vests in the State: first, the failure of the company to pay the bonds and interest; and, secondly, the payment of them by the State; and then the rail road only was to become the property of the State. Acts of 1839, pp. 214, 216, ss. 2, 4. The act of March, 1841, says: " a portion of the first instalment of interest on said bonds is due and unpaid, and the company is unable to pay the same," to wit, the portion unpaid, wherefore " the state treasurer" is directed "to pay such portion of the interest on said bonds as may remain due;" and then it is declared, not only that the *rail road* is forfeited, but that all the " machinery, fixtures, slaves, and appurtenances thereunto belonging, or in any wise appertaining, be declared forfeited also." There is no proof that the company had failed to pay the interest on the bonds. On the contrary, it is admitted that it had paid a portion of it; nor is there any evidence that the State has paid any thing. The treasurer was directed to pay; but whether he has or not is unknown to us. These things were matters for judicial enquiry and decision; and, in assuming to enquire and decide upon them, for the purpose of declaring a forfeiture, we are clearly of opinion that the Legislature exceeded its constitutional authority. We are, therefore, constrained to say, that that portion of the act of the Legislature entitled " An act to protect the credit of the State," approved March 8th, 1841, which declares the Clinton and Port Hudson Rail Road, with all the machinery, fixtures, slaves and appurtenances *thereunto* belonging, or in any wise appertaining, forfeited to the State, is unconstitutional and void, and gives the State no right or title to the same, other than what rights it may have under the act of 1839, (Acts of that year, pp. 214, 216, ss. 2, 4,) and the act of mortgage and pledge passed in conformity to the same.

The attorney general has argued with much force and ingenuity that, as the corporation consented to the State's taking possession of the property, and agreed to hold it as agent, it was sufficient, and made the forfeiture perfect. This would, perhaps, be true, if no one but the State and the corporation

Perry and another v. Commissioners of the Clinton and Port Hudson Rail Road Co.

were parties; but the State and the corporation cannot by their agreements deprive others of their rights.

The second question is, what rights the commissioners acquired to the rail road and other property belonging to the corporation, by the proceedings for the forfeiture of the charter? The act of the Legislature of the 26th March, 1842, gives the answer. It says, (sec. 2,) "should a forfeiture of the charter of said company be decreed, then and in such case the affairs of said company shall be put into immediate liquidation, and conducted according to the provisions of an act entitled 'An act to provide for the liquidation of banks,' with this single reservation, that the three commissioners of liquidation shall be appointed by the governor." A right was reserved to the State to foreclose the mortgages of the stockholders, according to existing laws. The commissioners therefore have the same rights to the property, and must administer it for the benefit of the creditors, in the same manner as the commissioners of other banks do, when their charters have been forfeited.

Upon the third point, it seems to us that it is enough for us to say, that the sixth section of the act of the Legislature, approved March 25th, 1844, entitled "An act providing for the adjustment and liquidation of the debts proper of the State, and for other purposes," was based upon the assumption that the rail road, machinery, fixtures, slaves, &c, belonged to the State. It having been shown, by our decision upon the first point, that this assumption was without foundation, it follows that the Legislature could not authorise the treasurer to sell it as property belonging to the State.

The parties consenting, it is ordered that the judgment previously rendered herein (ante p. 412) be set aside; and we do now order and decree, that the judgment of the District Court, so far as it decrees, that the Clinton and Port Hudson Rail Road, with the machinery, fixtures and appurtenances thereof, and the slaves surrendered, are not the property of the State, but are vested in the commissioners appointed to liquidate the affairs of the corporation in the manner and for the purposes directed by law, be affirmed. And it is further ordered, that this case be remanded to the District Court,

that the commissioners may proceed under its authority and that of the law, to the sale of the property as ordered, and to the filing of a tableau of distribution, reserving to each and all of the creditors, their respective rights to assert their claims and privileges, and to oppose such as each may think proper, when the tableau or list of debts shall be legally presented and filed; the appellants paying the costs of the appeal.

*A. M. Dunn* and *Roselius*, for the plaintiffs.

*Muse* and *Merrick*, for the appellants.

*Preston*, Attorney General, for the State.