No. 9265.

LOUISIANA BOARD OF TRUSTEES OF THE AMERICAN PRINTING HOUSE FOR THE BLIND vs. V. J. DUPUY ET ALS.

The title of a legislative Act need not be a synopsis of its contents. It is sufficient if it indicate the general purpose of the law without specifying each provision thereof.

The legislature usurps the functions of the judiciary when it pronounces the forfeiture of the chartered rights of a corporation and executes its own decree by taking possession of the corporate funds.

American Printing House vs. Dupuy et als.

The legislature can delegate to the State Treasurer authority to demand and receipt for certain funds, and the authority to demand includes *ex vi termini* authority to demand judicially or stand in judgment for the State.

The State can reclaim a donation made by it to a corporation when the condition upon which it was made has not been fulfilled and the time for its performance has passed.

But she cannot confiscate funds in the possession of the corporation, donated by others, and appropriate them to her own use or to the use of another corporation.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*E. T. Merrick* and *John A. Campbell* for Plaintiff and Appellant.

*M. J. Cunningham,* Attorney General, *H. B. Magruder* and *F. L. Richardson, contra.*

The opinion of the Court was delivered by

MANNING, J. The object of this suit, the nature of the proceedings therein, and the mode devised by this court to enable the parties to test their respective claims and ascertain their rights, are fully set out in the Opinion read when it was here before. 31 Ann. 305.

Pursuant to the decree then rendered an account was filed by the plaintiff which was opposed by a number of the contributors—by all of them who had theretofore brought suit for their contributions and by others who were induced to demand them then—and the result was that the plaintiff compromised with all these claimants and paid them five thousand dollars in full. This settlement was put in the form of a judgment.

But meanwhile the Treasurer of the State and the Louisiana Institution for the Blind had also opposed the account, and this compromise is expressly stated to have been made without prejudice to the rights of these two opponents who were therefore unaffected thereby. The present contest is between them and the plaintiff.

The State had contributed two thousand dollars to the plaintiff by an appropriation made in 1860 the year following its incorporation, the charter having been made by seven persons in January 1859 under the general law authorizing corporations to be thus made. The original petition in this case was filed in December 1877 and the next succeeding legislature passed the Act which is the basis of the pretensions set up in behalf of the State in the present controversy. It is as follows:

AN ACT

"To authorize and direct the Louisiana Board of Trustees of the American Printing House for the Blind to pay certain funds into the State Treasury for the benefit of the Louisiana Institution for the Education of the Blind and Industrial House for the Blind; to provide

the mode of said payment and for the delivery of said money to the treasurer of said institution, and to relieve from responsibility said Board of Trustees of the American Printing House for the Blind.

### PREAMBLE.

"Whereas, the Louisiana Board of Trustees of the American Printing House for the Blind, incorporated under the general laws of the State, and organized under a charter bearing date —————, 1859, did receive contributions to be applied to the establishment at Louisville, Ky., of the American Printing House for the Blind; and

"Whereas, said charter provides that if said printing house should not be established, as required by said charter, within a limited time therein fixed, which limit has long since been reached, said donations should revert, with accumulated interest thereon, to the original donor; and

"Whereas the State of Louisiana, by Act No. 163, of the General Assembly of 1860, approved March 10th, 1860, entitled 'An Act to appropriate the sum of two thousand dollars to the Louisiana Board of Trustees of the American Printing House for the Blind,' did appropriate the sum of two thousand dollars to said board for said purpose; and

"Whereas, said sum with accumulated interest is now in the hands of said board; and

"Whereas, there remains also in the hands of said board certain other amounts contributed by private individuals for said purpose, which amounts are unclaimed by said contributors; and

"Whereas, owing to the small amounts contributed by each of said donors, and the lapse of time since said donations were made, it is improbable that said donations will ever be reclaimed by said contributors; and

"Whereas, the provisions of said act of incorporation have not been complied with, now, then, for the purpose of relieving said board of trustees of responsibility, and of realizing, so far as practicable, the spirit of said donation,

SEC. 1. *Be it enacted by the Senate and House of Representatives of the State of Louisiana, in General Assembly convened,* That the Louisiana Board of Trustees of the American Printing House for the Blind be and are hereby authorized and required to pay into the State Treasury, the aforesaid sum of two thousand dollars, with all accumulated interest thereon, donated by the State of Louisiana pursuant to Act No. 163, approved March 10th, 1860, and all such other sums as may have been donated or contributed pursuant to the provisions of the act of incorporation of said Board and remain at present unclaimed by said contributors in the hands of said board, together with all accumulated interest on said sums.

"SEC. 2. *Be it further enacted, etc.,* That the State Treasurer be and he is hereby authorized to demand and receipt for all sums of money, with accumulated interest, within the contemplation of the foregoing section, and that upon compliance with the provisions of said section the aforesaid Board of Trustees shall be released from all responsibility relative to any and all moneys thus paid into the State Treasury, and forever guaranteed and protected against all loss or damage growing out of or in any manner connected with such sum or sums of money thus paid into the State treasury, whether against the original contributors, their heirs or assigns, or any other person or persons whomsoever.

"SEC. 3. *Be it further enacted, etc.*, That all moneys paid into the State treasury pursuant to the provisions of this act shall be and remain a special and inviolable fund for the sole and exclusive benefit of the Louisiana Institution for the Blind and the Industrial House for the Blind, domiciled at Baton Rouge in said State, and that said money shall be paid over by the State Treasurer to the Board of Trustees of said Louisiana Institution for the Blind and Industrial House for the Blind, whenever demanded by said Board on the warrant of the treasurer thereof, countersigned by the vice president of said board.

"SEC. 4. *Be it further enacted, etc.*, That in case any sum or sums, with accumulated interest, to be as aforesaid paid into the State treasury should be hereafter claimed by any of the contributors of said sums, or others, upon making due proof · of said claims before any court of competent jurisdiction and obtaining judgment therefor, upon presentation of a duly authenticated copy of said judgment, the State Treasurer shall pay the same out of any money in the treasury not otherwise appropriated.

"SEC. 5. *Be it further enacted, etc..* That all laws and parts of laws in conflict with this act be and the same are hereby repealed.

"SEC. 6. *Be it further enacted, etc.*, That this act shall take effect from and after its passage.

"Approved May 14, 1878."

Numerous objections are made to this Act. It is charged to be unconstitutional because it does not express its objects in its title, but surely it is not necessary at this late day to say that the title of an Act need not be a synopsis of its contents. It is sufficient if it indicate the general object or purpose of the law without specifying each provision made therein.

It is said also that it invades the judicial department of the government and assumes to find certain facts and to declare the legal consequences flowing therefrom. The preamble is justly liable to this objection, but in so far as it declares a forfeiture of the plaintiff's charter and assumes that the donors who have not already reclaimed their donations will never do so, and because of this assumption proceeds to take possession of the whole fund, the Act goes beyond legislative power and to that extent is null. As was said in Perry v. Coms. Clinton & Port Hudson R. Co., XI Rob. 414, the legislature has no right, having enacted laws providing what infractions of obligations of corporations shall produce forfeiture of their chartered privileges, to try a particular case, decide it, and execute its own decree.

As to the denial of the authority of the State Treasurer to sue for the donation made by the State, it is competent for the legislature to confer that power upon him, and the authority to "demand and receipt for" such donation includes the authority to demand it judicially and give receipt for it in her name—in other words to stand in judgment for the State.

The power and the right of the donors to reclaim their contribution has been admitted by the plaintiff. Such admission is contained in the payment to those, who participated in these proceedings by opposing the plaintiff's account, the sums agreed to be received in full of their demands. There were over two hundred of them. The State has an equal right to reclaim her donation of two thousand dollars which we shall allow without taking into account the fee ( $200 ) paid by the plaintiff for getting it out of the Treasury, and shall reckon the interest from the date of the Act instead of the earlier period of the receipt of the donation or the later one of judicial demand. And this is the full extent of the State's demand to which we can listen.

The attempt to confiscate moneys that are not hers by ordering the payment of them into her Treasury on the pretence of relieving the Trustees of responsibility which they have not asked is a stretch of legislative power that no Court can sanction under our system of government. The fund has been nursed by the Trustees with unexampled care and scrupulous fidelity. Its accumulation commenced in 1860, it survived the perilous war-time, survived that more perilous time, the decade that followed the war, when fortunes were engulphed and public funds withered, and to-day is more than double the original sum. When the State orders the Trustees to pay the whole with its accumulated compounded interest into her Treasury, at the same moment announcing her purpose to give it to another institution, she gives another example of the ease with which one can be generous with the money of others. She cannot appropriate the money of others to her own use. She can only reclaim that which she gave on the non-fulfillment of the condition upon which she gave it. Montpelier Academy vs. George, 14 La. 395.

The case is not assimilated to that in which the State enacts that the curator of a vacant estate shall pay into her Treasury the funds in his hands, for of that estate she is the ultimate heir.

It is not for us to say what is to become of the fund now in the hands of the plaintiff. We may adopt the language of the Supreme Court of the United States in reference to it ;—"the Louisiana board by virtue of their distinct organization, their separate position, the local character of their operations, and their just expectations of a special benefit to the blind of their State, not only had a right but were under an obligation to take due care that the institution to which their fund should be entrusted was such an institution in its objects and constitution as was contemplated when the scheme was undertaken and entered into

and not one materially different therefrom in other respects." Printing House v. Trustees, 104 U. S. Rep. 724.

It is therefore ordered and decreed that the judgment of the lower court is reversed, and that the Treasurer of the State have and recover of the plaintiff two thousand dollars with five per cent per annum interest from May 14, 1878 and the costs of his opposition in both courts, and that the opposition of the Institution for the Blind at Baton Rouge is dismissed at its costs.

### On Application for Rehearing.

The cost of appeal was thrown on the plaintiff by our decree. It was an inadvertance and needs correction which may be made without a rehearing, which is refused.

It is ordered and decreed that the plaintiff have and recover of the opponents the cost of appeal, and with this alteration that our former judgment stand.