132 So.2d 928

**STATE of Louisiana**

v.

**Dennis CENAC et al.**

**In re State of Louisiana applying for certiorari or writ of review to the Court of Appeal, First Circuit, Parish of Terrebonne.**

No. 45856.

Nov. 17, 1961.

Opinion of Court of Appeals, see page 897, ante.

HAMITER, J.

FOURNET, C. J., concurs with written reasons.

McCALEB, J.

SUMMERS, J., concurs with reasons.

HAWTHORNE, J., is of the view that the State's application for a writ should be granted and assigns written reasons.

HAMLIN, J., is of the opinion that the State's application for a writ should be granted and assigns written reasons.

SANDERS, J., is of the opinion that the writ should be granted and assigns written reasons.

FOURNET, Chief Justice (concurring in the refusal to grant the writ).

Ordinarily, when an application for a writ to review a decision of an inferior court is denied by a majority of the members of this court, the minority views are not reduced to writing, and inasmuch as under our rules an application for rehearing of our action on a writ is never considered, such views have little, if any, value. This is particularly true in the instant case since a review of the previous decisions of this court upon which the Court of Appeal for the First Circuit based its decree here will readily disclose that the issues posed in the above entitled case are identical in every respect with those disposed of in the first decision of this court in the case of California Co. v. Price, 225 La. 706, 74 So.2d 1.

Of the three justices who have not subscribed to the court's action in refusing the instant writ, only Mr. Justice HAWTHORNE was a member of this court at the time the first Price case and its sequel, the second Price case (234 La. 338, 99 So.2d 743), were handed down. From a perusal of his lengthy written views for not concurring with the majority action in the instant case, I cannot conceive what purpose can be served by its rendition, for I find nothing therein that was not argued and reargued either in brief or orally in the two Price cases, and most of which

can be found by reading the dissenting opinions in those cases.

Much is now being made of the fact that the legislature of 1954 sought to nullify this court's decision in the first Price case by its adoption of Act No. 727 (R.S. 9:5661) eleven days after the finality of that decision by declaring its conception of the public policy of the state at the time the legislature of 1912 adopted its Act No. 62, which was the basis for the decision in the first Price case. Yet no mention is made of the fact that at the time of the decision in the second Price case the provisions of Act No. 727 of 1954 had been in full force and effect for some three years, and the court in its majority view completely ignored the then Attorney General's *urgent plea* that he be permitted to test the Beckwith title in an appropriate petitory action—already instituted—in the light of the state's public policy as declared in Act No. 727 of 1954, and also in the light of additional information he had acquired disclosing the Beckwith patent had not been secured from the legally constituted officials of Louisiana, but, instead, through fraud, deceit, and collusion by one John Beckwith (an ex-general of the Union army, who, with other northern politicians, had swarmed over the Southland following the Civil War from a "carpetbag" governor maintained in office

through the force of Federal troops, and on which no tax was ever paid. The court was at that time also aware of the decision of the Supreme Court of the United States in Illinois Central Railroad Co. v. People of the State of Illinois, 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018, quoted from at length in my learned colleague's written statement, as can be readily ascertained by a reference to my dissenting opinion in the second Price case.

Yet in the second Price case the court, by a majority opinion, in which Mr. Justice Hawthorne concurred, concluded the decision in the first Price case had adjudged the Beckwith group to be the owners in full ownership of all of the land included in the Beckwith patent, thus not only approving the rationale of the decision in the first Price case, that is, that "The manifest purpose of Act No. 62 of 1912 was to stabilize titles issued by the State over the signature of the Governor and Register of the State Land Office in cases wherein the State and other interested parties failed to contest the patents within a stated time," [225 La. 706, 74 So. 2d 14] but reinforced the holding in the majority opinion that *"when the stated time elapsed (the six year period provided by Act 62 of 1912) without action, the curative provisions of the law became operative and rendered ALL SUCH PATENTS UNASSAILABLE."* (The em-

phasis and matter within brackets has been supplied.)

While it may be considered regrettable that I was unable to convince my learned colleagues of the far reaching effect of that decision at the time, I do not feel that this court can now in good conscience afford to deal differently with respect to the rights of all other such patents, particularly when it is noted that the property included in and covered by the patent held by the Cenacs was acquired in good faith for the purpose of operating a fish and oyster industry that was actually established on the premises and operated there these many years, during all of which time the taxes thereon were regularly paid each year.

Indeed, there would be no stability of titles in this state if every time there is a change of the membership of this court, previously adjudicated property rights are to be changed to accord with the views of the individual members as newly composed.

SUMMERS, Justice (concurring).

I concur in the ruling denying the application for a writ of certiorari in this case for I am convinced of the correctness of the decision of the Court of Appeal (132 So.2d 897).

The only issue presented by the application which this Court has not heretofore adjudicated is the effect of Act 727 of 1954[1] upon the prior jurisprudence of this State construing Act 62 of 1912.

The Act of 1954 is an effort on the part of the Legislature to render nugatory the settled judicial construction of the 1912 act, by declaring that what an entirely different Legislature had in mind over two generations before was a purpose and intent which is the very antithesis of what has been judicially declared to be the 1912 Legislature's "manifest purpose".

Article II, Sections 1 and 2, of the LSA–Louisiana Constitution provides for the distribution of the powers of government into three distinct departments—legislative, executive and judicial—and that no one of these departments, nor any person or collection of persons holding office in one of them, shall exercise power properly belonging to either of the other. This constitutional expression of the traditional American principle of separation of powers in government has been steadfastly upheld by this Court, and the Constitution charges obedience to this mandate by all state officials.

It is also a fundamental rule of constitutional law that the interpretation and construction of legislative acts in litigation are matters exclusively within the province of the courts. It does not lie within the

1. LSA–R.S. 9:1107–1109.

domain of the lawmakers to interpret their own laws.[2]

For these reasons I do not consider the Act of 1954 can change the meaning of the Act of 1912.

The other issues presented by the application have been answered by this Court by decisions in Atchafalaya Land Co. v. F. B. Williams Cypress Co., 146 La. 1047, 84 So. 351 (1920), Atchafalaya Land Co. v. Dibert, Stark & Brown Cypress Co., 157 La. 689, 102 So. 871 (1925); State v. Sweet Lake Land & Oil Co., 164 La. 240, 113 So. 833 (1927); Realty Operators, Inc. v. State Mineral Board, 202 La. 398, 12 So.2d 198 (1942); O'Brien v. State Mineral Board, 209 La. 266, 24 So.2d 470 (1946); Humble Oil & Refining Co. v. State Mineral Board, 223 La. 47, 64 So.2d 839 (1953); and California Co. v. Price, 225 La. 706, 74 So.2d 1 (1954).

In addition to the correctness of the decisions in the Humble Oil & Refining Co. and California Co. cases, supra, I am con-vinced that constancy in our jurisprudence, especially when a rule of property has been established, is not only expected but vitally necessary to the stability of our system of law.

HAWTHORNE, Justice (dissenting).

Justice HAMLIN, Justice SANDERS, and I are of the view that the application of the State of Louisiana for a writ of certiorari in this case should be granted.

The other members of the court, constituting a majority, have denied the state's application to review a Court of Appeal judgment which, in effect, holds that navigable bodies of water, such as bays which are arms of the sea, rivers, and lakes, may be owned by private individuals or corporations.[1] 132 So.2d 897. From such a holding it follows that these private owners are entitled to the proceeds from oil and gas leases executed by them covering these navigable water bottoms.[2] That the proceeds from such oil and gas leases run in-

---

2. Cotton v. Brien, 6 Rob. 115; Perry v. Com'rs, etc. of Clinton & Port Hudson R. Co., 11 Rob. 412; City of New Orleans v. Louisiana Mutual Insurance Company, 26 La.Ann. 499; American Printing House for Blind, Louisiana Board of Trustees v. Dupuy, 37 La.Ann. 188; Parish of Caddo v. Parish of DeSoto, 114 La. 366, 38 So. 273; State ex rel. Parish Board of Health of Calcasieu Parish v. Police Jury of Calcasieu Parish, 161 La. 1, 108 So. 104; State ex rel. Ward v. Board of Sup'rs of Elections, 186 La. 949, 173 So. 726; State ex rel. Porterie v. Housing Authority of New Orleans, 190

La. 710, 182 So. 725; and State Licensing Board for Contractors v. State Civil Service Comm., La.App., 110 So. 2d 847, 850, affirmed 240 La. 331, 123

1. The Court of Appeal, as it was bound to do, was following the jurisprudence of this court, particularly our decisions in Humble Oil & Refining Co. v. State Mineral Board, 223 La. 47, 64 So.2d 839, and California Co. v. Price, 225 La. 706, 74 So.2d 1, with which I am not in accord.

2. Article 505 of the Louisiana Civil Code provides: "The ownership of the soil carries with it the ownership of all that is directly above and under it. * * *"

to millions of dollars no one can deny. Our law as I understand it is clear that this huge sum belongs to the people of this state because the state in its sovereign capacity is vested with title to the navigable waters and their beds. Being of this view, I cannot subscribe to a holding which to me is contrary to law and which permits private persons to enrich themselves at the expense of the people of this state.[3]

In this state ownership of the soil carries with it the ownership of all that is directly above and under it, carries with it the right to all that the thing produces and all that becomes united to it either naturally or artificially, and gives the right to use, enjoy, and dispose in the most unlimited manner. La.Civ.Code Arts. 491, 498, 505. The law is well settled that ownership carries with it the right of possession. Then does not private ownership of navigable waters carry with it the right of the owner to enclose the area which he

owns, the right to deny to the public the use of these waters for navigation, the right to deny to the public the privilege of taking fish, oysters, and shrimp from these waters? Under the majority's view the private owner may extract the oil and gas from these navigable waters for his own use. Can he not also extract and remove for his own use sand, gravel, and shells? So that these rights may not be vested in private persons, rights that belong to all the people, since Louisiana became a state it has been contrary to public policy and contrary to the express provisions of our Civil Code to permit private ownership of navigable bodies of water.

In California Company v. Price, 225 La. 706, 74 So.2d 1, the state claimed under a lease executed by it covering Grand Bay, a navigable arm of the sea, the proceeds from eight producing oil wells that had been drilled in Grand Bay. On May 31, 1954, a majority of this court rejected the state's claim and held that certain private indi-

See also Article 498, which provides: "The ownership of a thing, whether it be movable or immovable, carries with it the right to all that the thing produces, and to all that becomes united to it, either naturally or artificially. * * "

3. It would be interesting to know the approximate sum the state has lost as a result of the holding by this court that navigable waters or their bottoms are susceptible of private ownership, and also to have an estimate of its future losses as a result of this holding. Much has been said and written about the state's enormous financial loss occasioned by the federal government's acquisition of the

Louisiana Tidelands. Certainly if private persons can claim the revenues derived from oil and gas leases in the remaining bottoms of navigable waters of this state under old patents issued prior to 1921, the state's financial loss will be tremendous, and this should be of as much concern to the people of this state as the loss of the Tidelands. The state's financial affairs are apparently in a serious condition, yet by the decision of the majority of this court gigantic sums will be lost to the state which might avert a financial crisis and possibly obviate the need for further taxation of its already overburdened taxpayers.

viduals were entitled to the proceeds from these wells under a lease they had executed covering these navigable water bottoms. No doubt because of the far-reaching effect of this decision on the fisc of this state and the huge financial loss that the state would suffer on account of the decree of this court, and because of the public policy of the state, there was introduced in the Louisiana Senate on June 10, 11 days after the decision in the Price case, as *emergency legislation* Senate Bill No. 353, which was adopted by the Legislature as Act 727 of 1954. This act provides that it has been the public policy of the state at all times since its admission into the Union that all navigable waters and their beds within the state's boundaries are common and public things and insusceptible of private ownership; that the intent of the Legislature at the time of the enactment of Act 62 of 1912 (now R.S. 9:5661) and continuously thereafter was, and at the present time is, to ratify and confirm only those patents which convey or purport to convey public lands susceptible of private ownership, of such a nature and character that their alienation or transfer is authorized by law, *but not patents or transfers which purport to convey or transfer navigable waters and their beds.* This act further provides that *any patent or transfer theretofore or hereafter issued or made is null and void so far as it purports to include navigable waters and their beds,* as having been issued or made in contravention of the public policy of this state. The act also provides that no statute enacted by the Legislature *shall be construed to validate by prescription or peremption any patent or transfer issued by the state insofar as it purports to include navigable or tide waters or their beds.* Moreover, the act specifically repeals Act 62 of 1912 insofar as that statute may conflict with the provisions of the 1954 act.

Respondents in this case, private individuals, are claiming ownership of the bed of Lake Barre,[4] conceded to be a navigable body of water, under a patent from the state issued prior to 1921.[5] They contend that Act 62 of 1912 makes their patent unassailable, as held in the Price case, supra, and that they are therefore entitled to the ownership of the bed of this navigable lake.

The state relies on Act 727 of 1954 (now R.S. 9:1107–1109), which we have discussed just above, asserting in its application for certiorari that this act has a direct bearing on the issue in this case and must be taken into account in deciding the case.

4. Lake Barre is situated in the coastal area of Terrebonne Parish and is accessible to the sea via Terrebonne Bay or Timbalier Bay.
5. The Louisiana Constitution of 1921, Article 4, Section 2, contains the following provision: " * * * Nor shall the Legislature alienate, or authorize the alienation of, the fee of the bed of any navigable stream, lake or other body of water, except for purposes of reclamation. * * * "

In refusing the state's application the majority of the court denies the state an opportunity to argue the effect of this act—notwithstanding that the act plainly provides that any patent like the one in the instant case, heretofore or hereafter issued, is *null and void* insofar as it includes navigable waters and the beds thereof, notwithstanding that it plainly provides that in enacting Act 62 of 1912 it was the intent and purpose of the Legislature that that act was to be *applicable only to public lands susceptible of private ownership*, notwithstanding that it specifically repeals Act 62 of 1912 insofar as it is in conflict therewith, and notwithstanding that it specifically provides that no act of the Legislature is to be *construed so as to validate by prescription or peremption any patent issued by the State so far as it purports to include navigable or tide waters of their beds.*

As I said in my dissent in the Price case, supra, the ruling of this court permitting private ownership of navigable bodies of water within the boundaries of this state is in direct violation of, and contrary to, the express provisions of our Civil Code (Arts. 450, 451, 453, 482), and is contrary to the holding of this court in a long line of jurisprudence. This jurisprudence extends from 1838 to 1959, and includes Milne v. Girodeau, 12 La. 324; Zeller v. Southern Yacht Club, 34 La.Ann. 837; Burns v. Crescent Gun & Rod Club, 116 La. 1038, 41 So. 249; Louisiana Navigation Co., Ltd.,

v. Oyster Commission of Louisiana, 125 La. 740, 51 So. 706; State v. Bayou Johnson Oyster Co., 130 La. 604, 58 So. 405; Miami Corporation v. State, 186 La. 784, 173 So. 315; Roy, Inc., v. Board of Commissioners, 237 La. 541, 111 So.2d 765.

In the last cited case, decided in 1959, plaintiff was seeking compensation for the appropriation of land bordering on Lake Pontchartrain. In denying compensation we said: "It is immaterial whether the property be classified as sea shore, which, being common property, belongs to no one in particular and is insusceptible of private ownership, or as the bed of a navigable lake, ownership to which is vested in the state up to the high-water mark, since in either event plaintiff would not be entitled to compensation." In support of this statement the court cited Articles 451, 450, and 482 of the Civil Code and many decisions of this court, most of which I have cited just above.

That it is against the public policy of this state for private individuals to own navigable bodies of water is shown beyond question by acts of the Legislature from 1886 to 1954. These statutes are Act 106 of 1886, Act 110 of 1892, Act 121 of 1896, Act 153 of 1902, Act 52 of 1904, Act 189 of 1910, Act 54 of 1914, Act 139 of 1924, Act 67 of 1932, and Act 727 of 1954. Four of these statutes were enacted later than Act 62 of 1912, which the majority believes has the effect of vesting private individuals

with title to navigable waters of this state when claimed under a patent issued prior to 1921. I have already discussed the provisions of the 1954 act. It should be noted that there is language in acts adopted after 1912 which is pertinent here. These acts, after enumerating certain kinds of navigable bodies of water, provide that no grant, sale, or conveyance of land forming the bottoms of such bodies of water "shall hereafter be made by the Register of the Land Office" and that "no one shall own in fee simple any bottoms, or lands enumerated".

It is also pertinent to observe here that Act 62 of 1912, which the majority considers has the effect of vesting in private persons title to navigable bodies of water under patents issued prior to 1921, *is not a legislative grant or conveyance of any navigable body of water*, but is nothing more that a statute of prescription or peremption. It can be applicable only to patents to public lands that are susceptible of private ownership, of such a nature and character that their alienation or transfer is authorized by law; it cannot apply to patents to the navigable waters of this state.

In Illinois Central Railroad Co. v. People of State of Illinois, 146 U.S. 387, 13 S.Ct. 110, 118, 36 L.Ed. 1018, the railroad claimed the ownership of the lands beneath navigable waters of Lake Michigan under a legislative grant. The Supreme Court of the United States in that case stated that the question to be considered was whether the Legislature of Illinois was competent to deprive the state of its ownership of these submerged lands. After stating that title to the lands under navigable waters was in the State of Illinois (as it is in the State of Louisiana), the court said:

"But it is a title different in character from that which the State holds in lands intended for sale. It is different from the title which the United States hold in the public lands which are open to pre-emption and sale. It is a title held in trust for the people of the state that they may enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein, freed from the obstruction or interference of private parties. * * * *A grant of all the lands under the navigable waters of a state has never been adjudged to be within the legislative power*; and any attempted grant of the kind would be held, if not absolutely void on its face, as subject to revocation. The state can no more abdicate its trust over property in which the whole people are interested, like navigable waters and soils under them, so as to leave them entirely under the use and control of private parties, * * * than it can abdicate its police powers in the administration of government and the preservation of the peace. * * *" (Italics mine.)

So far as I know, the Louisiana Legislature, unlike the Illinois Legislature, has never attempted to convey to private persons title to the beds of navigable bodies of water. Title to such property is in the state in its sovereign capacity, which holds it in trust for the use and benefit of all the people. Our Legislature has consistently maintained and protected the trust imposed upon the state for the benefit of the people, as evidenced by the acts which I have cited above, particularly the 1954 act. Certainly it cannot be argued or contended that Act 62 of 1912 is a legislative grant of the beds of navigable waters; as stated previously, that act is nothing more than a statute of prescription or peremption designed to confirm and quiet patents to lands susceptible of private ownership, of such a nature and character that their alienation or transfer is authorized by law.

Much has been said about the fact that prior to our 1921 Constitution there was no constitutional prohibition against the Legislature's alienating the beds of navigable waters; but to me it is clear that even before the 1921 Constitution, and even without the prohibition contained in Article 4, Section 2, of that Constitution, the Legislature of this state was without power or authority to convey to private individuals the title to the beds of navigable waters belonging to the state. Such a conveyance would be a breach of trust, for properties of this nature belong to all the people of the state for their use and enjoyment; and, as stated by the Supreme Court of the United States in the Illinois Central Railroad case, supra, *"A grant of all the lands under the navigable waters of a state has never been adjudged to be within the legislative power; and any attempted grant of the kind would be held, if not absolutely void on its face, as subject to revocation".* (Italics mine.)

A patent from the state covering navigable waters issued to private persons, either before or after the adoption of the 1921 Constitution, is null and void ab initio. Even though such a patent was null and void, according to the majority's view it was made unassailable by Act 62 of 1912 with the result that title to navigable waters became vested in private individuals. Since the Legislature is without power to make a legislative grant to private persons of the state's title to navigable bodies of water, how can its adoption of Act 62 of 1912 accomplish such a transfer by validating an invalid and null patent? This act simply fixes a prescriptive or peremptive period for an attack on a patent issued by the state, and the Legislature could not by adopting this act take title away from the state and vest it in private individuals. In short, the Legislature could not by this method accomplish indirectly what it could not do directly—and, moreover, what it never intended to do

I do not think this writ should be denied on the theory that this court is bound to

follow a rule of property which the majority considers has been established in this state by the decisions in Humble Oil & Refining Co. v. State Mineral Board (the "Duck Lake" case), 223 La. 47, 64 So.2d 839, and California Co. v. Price, 225 La. 706, 74 So.2d 1, and other decisions containing statements which I regard as dicta.

In Miami Corporation v. State, 186 La. 784, 173 So. 315, 320, this court had occasion to declare forcefully and clearly that even in regard to the rules of property the maxim of stare decisis is not absolutely inflexible, particularly when it is shown that by following rather than by disregarding previous erroneous decisions from which evil resulted the community would suffer greater damage. There the court said: "In such situations, the courts have overruled the prior cases, in order to correct the jurisprudence. In Louisiana, this court has never hesitated to overrule a line of decisions where they establish a rule of property when greater harm would result from perpetuating the error rather than from correcting." The author of that opinion then discussed other cases where this court had overruled previous decisions relied on as establishing a rule of property, in particular a case in which, according to the author of the opinion, this court "swept aside a long line of decisions relied upon by the plaintiff as a rule of property".

Here greater harm would result from perpetuating the rule of property than from

overruling the cases establishing it. Surely it is better to protect the fisc than to protect the so-called rule of property which permits private individuals to enrich themselves at the expense of the people of this state.

Even if it should be conceded that the Price and Humble cases did establish a rule of property, the basis for this rule of property was repudiated and removed from the law when the Legislature passed Act 727 of 1954. This act provides that any patent purporting to convey title to navigable waters and their beds is null and void, that the 1912 act is applicable only to patents to lands susceptible of private ownership, and that no act of the Legislature is to be construed as validating by prescription or peremption any patent issued by the state insofar as it purports to include navigable waters and their beds. This statute is the law of this state, made so by the Legislature, and is presumed to be constitutional and valid; and it must be given effect until construed and declared invalid by a court of competent jurisdiction. By denying the writ the majority of the court has refused to consider the effect of this act upon this court's own decisions, preferring to follow those very decisions which the Legislature repudiated when it passed the act.

I am firmly convinced that any patent issued by the state to its navigable waters is an absolute nullity, void ab initio, and conveyed no title to the patentee, and that the

patentee therefore has no title which can be ratified, confirmed, or made unassailable by prescription or peremption. This is true because under our Code such property is not subject to private ownership, and private ownership of such property has been contrary to public policy ever since this state was admitted into the Union. Furthermore, Act 62 of 1912 had for its purpose to make unassailable only patents issued to lands which the state could alienate, and not patents to navigable waters and their beds which are insusceptible of private ownership. I am further convinced, as stated previously, that the Legislature has no power or authority to alienate navigable waters or their beds for the reasons given above even in the absence of a constitutional prohibition.

Since I hold these views, with all due respect to my colleagues constituting the majority I think the writ applied for in the instant case should be granted.

I concurred in the opinion rendered by the majority of the court in the second Price case for the reasons stated in my concurring opinion, which speaks for itself. See 234 La. 338, 357, 99 So.2d 743. In that concurring opinion, however, I was careful to state that I was still convinced that the holding of this court in the first Price case, 225 La. 706, 74 So.2d 1, was clearly wrong. In the instant case no new argument has been advanced or principle of law cited which has caused me to change this view.

Customarily the members of this court write their reasons for dissents such as this, on the face of the application for writs, but due to the length of this particular dissent it is not practical for me to follow this custom.

The most unusual thing about this case is that the court ignores, and refuses to consider and give effect to, a law (Act 727 of 1954) enacted by the Legislature which declares that a patent such as the one here involved *"heretofore or hereafter issued or made is null and void, so far as same purports to include such navigable waters and the beds thereof  *  *  *"*. (Italics mine.) The legislative branch of our state government enacted this law, and *it remains and is the law;* and all courts should abide by and follow it unless it should be declared illegal or unconstitutional by a court of competent jurisdiction, which has not been done. If by the denial of this writ the court intends to declare the act unconstitutional, the case becomes even more unusual and without precedent, for neither the district court nor the Court of Appeal, whose judgment we are here requested to review, considered or passed upon the legality or constitutionality of the act.

HAMLIN, Justice (dissenting from the refusal to grant the writ applied for).

In joining with Justice HAWTHORNE and Justice SANDERS in their dissents from the refusal to grant the writ applied

for, it is my view, simply stated, that the impact, force or result (call it what one will) of the cases of Humble Oil & Refining Co. v. State Mineral Board, 223 La. 47, 64 So.2d 839, 840 (commonly known as the "Duck Lake Case"), California Co. v. Price, 225 La. 706, 74 So.2d 1 and its sequel California Co. v. Price, 234 La. 338, 99 So.2d 743, is to allow persons to deprive the State and the public of millions of dollars by paying little or nothing for navigable water bottoms, and that such impact, force or result is against public policy.

Therefore, the jurisprudence should be corrected or changed so as to conform to public policy.

In the future, any expenses incurred by those who have incurred them as a result of the decisions in the above cases could be reimbursed or be ordered reimbursed, with legal interest from the dates incurred. They would then suffer no loss.

Such expenses and legal interest thereon, in my opinion, would be insignificant when compared with the enormous amount of money the State will be deprived of.

The rights acquired by the successful parties in the above cases would not in any way be affected as a result of the change in the jurisprudence, as the above cases are final and definitive; but the rights of the State and the public will be protected in the future.

I think the writ applied for in the instant case should be granted, and I respectfully dissent from the refusal to grant same.

SANDERS, Justice (dissenting).

Under present procedure, the granting of a writ from the judgment of the Court of Appeal is the only way that the instant case can reach this Court for full appellate presentation, including oral argument.

Since the decision in California Co. v. Price, et al., 225 La. 706, 74 So.2d 1, the legislature has spoken through Act 727 of 1954 (LSA–R.S. 9:1107–1109). This Act is clothed with a presumption of constitutionality. Despite this the Court of Appeal made no reference to it in the decision herein. The Supreme Court has not heretofore considered it nor passed upon its validity.

This case is of overwhelming importance to the people of the State of Louisiana. It adversely affects the public fisc, in which every taxpayer has a pecuniary interest. It may well reduce the state's revenues from water bottoms by millions of dollars.

For these reasons, I favor a full appellate review in this Court. Accordingly, I am of the opinion that the writ should be granted.