596 So.2d 272 (1992)
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Plaintiff-Appellant,
v.
E.R. SMITH, Jr. d/b/a E.R. Smith Electrical Contractor, et al., Defendants-Appellees.
No. 90-954.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1992.
Writ Granted June 5, 1992.
Sutherland, Juge, Horack & Dwyer Brian Miles, Kristi Stroebet, New Orleans, for plaintiff-appellant.
*273 Ronald F. DeFrances, Warren D. Ponder, Baton Rouge, for defendant-appellee Smith.
Woodrow W. Wyatt, and Brian L. Williams, Baton Rouge, for defendant-appellee Wagner.
Before DOMENGEAUX, C.J., and STOKER and YELVERTON, JJ.
STOKER, Judge.
These consolidated suits arise from a vehicular accident. The sole issue before this court on appeal is whether the trial judge erred, under LSA-R.S. 23:1103, in rendering a declaratory judgment holding that the injured plaintiff, Arnold Wayne Wagner, would receive all sums awarded him for his noneconomic damages arising from the accident in preference to payment of reimbursement to Wagner's employer's worker's compensation insurer, St. Paul Fire & Marine Insurance Company, (St. Paul). St. Paul sought reimbursement for worker's compensation benefits paid to Wagner. We reverse.

FACTS
On May 19, 1988, a truck owned by E.R. Smith, Jr. d/b/a E.R. Smith Electrical Contractor (Smith) and driven by Egles J. Hebert (an employee of Smith) made an allegedly improper lane change into a closed road construction zone and ran into equipment owned by the road construction company, Coastal Contractors, Inc. Arnold Wayne Wagner, a flagman for Coastal, and Joseph Jefferson, another Coastal employee, were injured in the accident. The accident caused damage to Coastal property and severe personal injuries to Wagner and Jefferson.
Boston Old Colony Insurance Co. was the liability insurer of the Smith truck. The maximum single limit of the Boston Old Colony policy was $1,000,000 for the death or injury of any person or persons.
Wagner filed suit against E.R. Smith, Jr., Egles J. Hebert, Boston Old Colony Insurance, and Hebert's unnamed liability insurer for $4,950,000 personal injury damages, which were allegedly caused by the negligence of Hebert while driving within the course and scope of his employment for Smith.
St. Paul filed suit against E.R. Smith, Jr., Egles J. Hebert, Boston Old Colony Insurance, and Hebert's unnamed liability insurer for reimbursement for worker's compensation benefits paid to Wagner.
The two suits were consolidated for trial. Boston Old Colony settled Jefferson's and Coastal's claims for damages for the sums of $170,000 and $3556, respectively. Then, desiring to be relieved of any further liability for or participation in the matter, Boston Old Colony invoked a concursus proceeding in the consolidated suits, depositing the remaining funds available under its policy ($983,151.96, including accrued legal interest) into the registry of the court. Neither Boston Old Colony nor its insured stipulated to liability for the accident or reached a settlement with any of the plaintiffs in this case.
Wagner and St. Paul then petitioned the trial court for a declaratory judgment as to the proper apportionment of the insurance proceeds. The trial court rendered a declaratory judgment on January 16, 1990 (signed on February 9, 1990) in favor of Wagner, giving him preference in payment from the insurance proceeds for his general damages before St. Paul could recover any reimbursement.
St. Paul filed a motion for supervisory writs from this court on February 22, 1990. The writs were denied on the ground that the judgment was appealable.
St. Paul appealed the judgment suspensively (on March 5, 1990), contending that LSA-R.S. 23:1103 mandates that preference be given to the employer (or his insurer) in apportionment of damages in suits against third parties regardless of how the damages are itemized or classified in the judgment.
In the meantime, on March 5,1990, Wagner filed a Rule to Show Cause why he should not be entitled to immediately withdraw the funds deposited in the court's registry, less the amount of worker's compensation already paid to him by St. Paul *274 ($285,074.73 plus $37,633.52 legal interest), or $660,445.71. Wagner contended that the sum of $660,445.71 was not contested by St. Paul since St. Paul's petition asks for only preferential credit against any future compensation obligations it may have. The trial judge permitted Wagner to withdraw $660,445.71 plus accrued interest from the registry of the court in a judgment signed on March 29, 1990.[1]

OPINION
St. Paul contends on appeal that the trial judge erred in giving Wagner's non-economic damages preference over St. Paul's right to reimbursement from the insurance funds deposited by Boston Old Colony into the registry of the court. We agree.
LSA-R.S. 23:1103 states:
"§ 1103. Damages; apportionment of between employer and employee in suits against third persons; compromise of claims
A.(1) In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six percent per annum, and shall be satisfied by such payment. The employer's credit against its future compensation obligation shall be reduced by the amount of attorney fees and court costs paid by the employee in the third party suit.
(2) No compromise with such third person by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the others unless assented to by him.
B. The claim of the employer shall be satisfied in the manner described above from the first dollar of the judgment without regard to how the damages have been itemized or classified by the judge or jury. Such first dollar satisfaction shall be paid from the entire judgment, regardless of whether the judgment includes compensation for losses other than medical expenses and lost wages.
C. If either the employer or employee intervenes in the third party suit filed by the other, the intervenor shall only be responsible for reasonable legal fees and costs incurred by the attorney retained by the plaintiff. Such reasonable legal fees shall not exceed one third of the intervenor's recovery for pre-judgment payments or pre-judgment damages. The employee as intervenor shall not be responsible for the employer's attorney fees attributable to post-judgment damages nor will the employer as intervenor be responsible for the attorney fees attributable to the credit given to the employer under Paragraph A of this Section."
Wagner argues on appeal that the accident occurred prior to the 1989 amendment of LSA-R.S. 23:1103(B) by Acts 1989, No. 454, (effective January 1, 1990) which specifically provides for full reimbursement to the employer without regard to how the damages have been itemized or classified *275 by the judge or jury. Wagner contends that St. Paul's right to reimbursement is therefore governed by the supreme court's interpretation of LSA-R.S. 23:1103(B) in Brooks v. Chicola, 514 So.2d 7 (La.1987), which limited the employer's right to reimbursement to the employee's award for special damages and prohibited the employer from obtaining reimbursement from the employee's award for general damages. We disagree with Wagner's argument.
Prior to the 1989 amendment, R.S. 23:1103 stated:
"§ 1103. Damages; apportionment of between employer and employee in suits against third persons; compromise of claims
In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six per cent per annum, and shall be satisfied by such payment.
No compromise with such third person by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the others unless assented to by him."
(Emphasis added).
The 1989 amendment revised R.S. 23:1103 to create subsections. All of former R.S. 23:1103 was incorporated into the amended version and LSA-R.S. 23:1103(B) was added. It states:
"B. The claim of the employer shall be satisfied in the manner described above from the first dollar of the judgment without regard to how the damages have been itemized or classified by the judge or jury. Such first dollar satisfaction shall be paid from the entire judgment, regardless of whether the judgment includes compensation for losses other than medical expenses and lost wages."
The clear intent of the legislative amendment was to override the supreme court's interpretation of R.S. 23:1103(B) in Brooks v. Chicola, supra, and to reinstate the law to the interpretation which it had been given prior to the Brooks decision. See Malone and Johnson, 14 Louisiana Civil Law Treatise: Workers' Compensation § 369, p. 88 (1991 Supplement). The legislative amendment of R.S. 23:1103(B) reflects the economic principles and rationale of the worker's compensation scheme. This "compensation principle", which is based upon a trade-off between an uncertain (though possibly higher) tort suit award and guaranteed immediate compensation payments, is thoroughly discussed in Malone and Johnson, 13 La. Civil Lae Treatise: Workers' Compensation § 32§ 34 (1980). Therefore, the 1989 amendment of LSA-R.S. 23:1103(B) was interpretive legislation. The general rule is that interpretive laws generally apply both prospectively and retroactively. LSA-C.C. art. 6, Official Comment (c).
In Gulf Oil Corp. v. State Mineral Bd., 317 So.2d 576 at 590 (La.1975) the court discussed interpretive laws and retroactivity as follows:
"Although the issue has never been passed upon by this Court, it has been suggested by some that Act No. 727 of 1954 is unconstitutional because it is a legislative usurpation of judicial power to interpret legislation and amounts to retroactive legislation impairing property rights. See concurring opinion of Mr. Justice Summers in the denial of writs in State v. Cenac, 241 La. 1055, 132 So.2d 928 (1961); see also, Comment, Ownership of Beds of Navigable Waters, 30 *276 Tul.L.Rev. 115, 125 (1955). Because Act No. 727 is not necessary to our decision in this case, we need not decide that issue squarely. We point out, however, that genuine interpretive legislation is a recognized function of legislatures in systems of codified laws, being considered a correlative of the power to legislate. The legislature, after all, seems to be an appropriate agency to clarify the meaning of its own statements. 1 M. Planiol, Treatise on the Civil Law, §§ 208-11 at 155-56 (La.St. L.Inst. transl. 1959); Yiannopoulos § 32.5. Moreover, the United States Supreme Court recognized the authority of Congress to enact interpretive legislation in Red Lion Broadcasting Co. v. Federal Communications Commission, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). Thus, interpretive legislation is not inherently violative of the principle of separation of powers.
"We find these observations especially applicable to Act 727. The repose statute of 1912 was ambiguous; in the [California Co. v.] Price [225 La. 706, 74 So.2d 1 (La.1953)] case, the majority of this Court expressly told the legislature that if it had found the Court's interpretation of the 1912 statute incorrect in the cases preceding Price, it could have corrected that interpretation. The lawmakers reacted by adopting the only legislation which could respond effectively to the judicial suggestion. If ever the Legislature were entitled to have an interpretive act upheld as not being an invasion of the judicial function or an abrogation of the theory of separation of powers, certainly the legislature which passed Act 727 as a response to the Court's solicitation was so entitled.
"Moreover, interpretive legislation cannot properly be said to divest vested rights, because, under civilian theory, such legislation does not violate the principle of non-retroactivity of laws. The interpretive legislation does not create new rules, but merely establishes the meaning that the interpreted statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes rights and duties. 1 M. Planiol, Treatise on the Civil Law, § 251 at 179 (La.St.L.Inst. transl. 1959); Yiannopoulos § 32.5 at 18 (1975 Supp.)."
(Emphasis added).
The supreme court again discussed interpretive laws and retroactivity in Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331 at 1338 (La.1978):
"The general principle of non-retroactivity of laws is stated in Article 8 of the Civil Code, which provides:
'A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts.'
According to civilian theory, however, the principle of non-retroactivity of existing legislation admits three exceptions: laws that suppress or lessen penalties, laws that are merely interpretive of existing legislation, and those that the legislature has expressly or impliedly declared to be retroactive. 1 M. Planiol, Civil Law Treatise, Nos. 249-252 (La.St. L.Inst.Transl.1959); A. Yiannopoulos, Civil Law System, 68 (1977).
"The exception relating to interpretive laws has been explained by Professor Yiannopoulos as follows:
`* * * The exception ... is justified on the ground that these laws do not establish new rules; they merely determine the meaning of existing laws and may thus be applied to facts occurring prior to their promulgation. In these circumstances, there is an apparent rather than real retroactivity, because it is the original rather than the interpretive law that establishes rights and duties. * * *' Yiannopoulos, supra, at p. 68.
"This Court has recognized that interpretive legislation cannot properly be said to divest vested rights, because, under civilian theory, such legislation does not violate the principle of non-retroactivity of laws. The interpretive legislation does not create new rules, but merely establishes the meaning that the interpreted statute had from the time of its *277 enactment. It is the original statute, not the interpretive one, that establishes rights and duties. Gulf Oil Corporation v. State Mineral Board et al., 317 So.2d 576 (La.1974); 1 M. Planiol, Treatise on the Civil Law, § 251 at 179 (La. State L.Inst.Transl.1959); cf. Green v. Liberty Mutual, 352 So.2d 366 (La.App. 4th Cir.1977).
"According to this Court's consistent interpretation, Article 8 of the Civil Code contemplates substantive laws as distinguished from merely procedural or remedial laws which will be given retroactive effect in the absence of language showing a contrary intention. General Motors Acceptance Corporation v. Anzelmo, 222 La. 1019, 1028, 64 So.2d 417, 420 (1953); Stallings v. Stallings, 177 La. 488, 148 So. 687 (1933); State v. Brossette, 163 La. 1035, 113 So. 366 (1927)."
See also, Barron v. State, Dept. of Public Safety, 397 So.2d 29 (La.App. 2d Cir.), writ denied, 401 So.2d 1188 (La.1981).
For the reasons set forth above, we hold that the 1989 amendment to LSA-R.S. 23:1103(B) is interpretive and retroactive. LSA-R.S. 23:1103(B) merely clarified the legislative intent of the original R.S. 23:1103.[2] Accordingly, the trial court erred in failing to apply the 1989 amended statute to this case. The declaratory judgment violates the express terms of R.S. 23:1103(B). Therefore, we must reverse the judgment and award preference in payment from the insurance proceeds to St. Paul for reimbursement of any worker's compensation benefits actually paid before any payment is made to Wagner for his damages, in full accordance with the terms of LSA-R.S. 23:1103.
St. Paul is also entitled to a credit against the deposited funds for any future compensation owed under LSA-R.S. 23:1103. In Billeaud v. United States Fidelity & Guaranty Co., 349 So.2d 1379, 1384 (La.App. 3d Cir.1977), this court clarified the manner in which damage awards must be apportioned between the injured party and the compensation carrier and how a credit for future compensation payments is given, as follows:
"From the cases of Hall [v. Hartford Acc. & Indem. Co., 278 So.2d 795 (La. App. 4th Cir.1973)] and Barrios, [v. Service Drayage Co., 250 So.2d 135 (La.App. 4th Cir.1971) ] it is clear that a compensation carrier is entitled to be reimbursed all it has actually paid out to the injured party as of the date the judgment becomes final. We are of the opinion that any excess of the award should be paid to the injured party. Thereafter, the compensation carrier should be given a credit on all sums it may come to owe in the future to, or on behalf of, the injured party up to the extent of payment of the tort recovery to the injured party. Until this excess is exhausted, the carrier should be obligated to make no further compensation payments or medical benefits. After exhaustion of the excess, if further compensation payments or benefits should become due, the carrier should then become obligated to resume payments."
See also, Strain v. Mitchell Mfg. Co., 534 So.2d 1385 (La.App. 4th Cir.1988), writ denied 537 So.2d 1165 (La.1989).
St. Paul is clearly entitled to a credit for any future compensation payments.

CONCLUSION
For the reasons given, it is ordered, adjudged, and decreed that there be judgment herein in favor of St. Paul Fire & Marine Insurance Co. and to be effective against the money deposited in the registry of the court by Boston Old Colony Insurance Co. ($983,151.96 plus interest), in the full sum of the amount St. Paul Insurance Co. has actually paid, or will actually pay prior to the date of satisfaction of a judgment *278 awarding damages to Arnold Wayne Wagner to or on behalf of Arnold Wayne Wagner as worker's compensation benefits and medical expenses, plus legal interest. The sum to be paid to St. Paul Insurance Co. is to be paid by preference and priority to any award of damages made to plaintiff, Arnold Wayne Wagner.
It is further ordered, adjudged and decreed that such portion of the amount of the money deposited by Boston Old Colony Insurance Co. which exceeds the amount which St. Paul Insurance Co. is entitled to be paid and which is awarded by a final judgment on the merits to Arnold Wayne Wagner shall be credited against any obligation which St. Paul Insurance Co. may owe to Arnold Wayne Wagner for future worker's compensation benefits, medical expenses, or otherwise accruing after the date of satisfaction of this judgment.
This case is remanded to the trial court for further proceedings not inconsistent with the law and the views expressed herein. Costs of this appeal are assessed to appellee Arnold Wayne Wagner.
REVERSED and RENDERED.
NOTES
[1] We note that this judgment, signed on March 29, 1990, was rendered in violation of the suspensive appeal order granted on March 5, 1990. The trial court lacked jurisdiction to render this judgment. LSA-C.C.P. art. 2088, art. 2 and art. 3. Therefore, the judgment of March 29, 1990 is null and void for lack of trial court jurisdiction. See Jaenke v. Taylor, 161 La. 996, 109 So. 814 (1924); Zion v. Stockfieth, 514 So.2d 224 (La. App. 5th Cir.1987); Money Shack, Inc. v. Martin, 512 So.2d 576 (La.App. 3d Cir.1987), writ denied, 519 So.2d 113 (La.1988); Atlantic Gulf Supply Corp. v. McDonald, 171 So.2d 481 (La. App. 4th Cir.1965).
[2] Counsel for Wagner has cited the case of Wood v. State Farm Ins. Co., 591 So.2d 1266 (La.App. 3d Cir.1991), for nonapplication of retroactivity in his case. Wood dealt with the retroactivity of the legislative repeal of the attorney's fee provision in LSA-R.S. 23:1102 C(2).

We find the Wood case inapposite to the case now before us since Wood dealt with the repeal of a substantive right and this case involves the legislative interpretation of a statute which created a substantive right.