Fred KUCHENIG, Appellant,

v.

The CALIFORNIA COMPANY, Appellee.

No. 20803.

United States Court of Appeals
Fifth Circuit.

July 12, 1965.

Rehearing Denied Oct. 10, 1965.

See also D.C., 233 F.Supp. 389.

C. Ellis Henican, Deynoodt, de la Vergne, Meyers & Buckley, Henican,

James & Cleveland, New Orleans, La., for appellant.

Lawrence K. Benson, New Orleans, La., for appellee, Milling Saal, Saunders Benson & Woodward, New Orleans, La., of counsel.

Before RIVES and WISDOM, Circuit Judges, and MORGAN, District Judge.

WISDOM, Circuit Judge:

In this diversity action conflicting claims of the plaintiff and of the State of Louisiana to oil-rich water bottoms raise the question whether the State (a) in its capacity as the defendant's lessor and also (b) in its capacity as a sovereign State asserting title to allegedly inalienable beds of navigable waters is an indispensable party defendant.

The land in suit is in Plaquemines Parish, Louisiana. It is covered by the waters of Breton Sound, an arm of the Gulf of Mexico. The plaintiff, Fred Kuchenig, a resident of Missouri, is the adopted son and sole heir of his uncle, Martin Kuchenig. The plaintiff alleges that at one time the property was swamplands;[1] that the State patented the land in 1911 to one Millard C. Baker; and that, after several intermediate transfers, Martin Kuchenig bought the land in 1912. In 1915 Martin Kuchenig lost the land to the State for unpaid taxes. In 1961 Fred Kuchenig redeemed it.[2] Meanwhile, in 1951 the State, through its Mineral Board, executed Mineral Lease 1960, leasing Tract 4778 to the California Company. This tract encompasses the property lost to the State for unpaid taxes but later redeemed. The Company has drilled four oil wells on Tract 4778—two completed wells, two dry holes—all in navigable waters. The State has received royalties on all production from the two completed wells.

In 1961 Fred Kuchenig filed this petitory (title) action against California Company. In addition to asking the court to recognize his sole ownership of the property in dispute, the plaintiff demanded that California Company account for all oil and gas taken from the land. California Company, asserting possession under the mineral lease from the State of Louisiana, moved to dismiss on the ground that the State, an indispensable party, had not been joined. The district court gave Kuchenig leave to join the State; when he failed to do so, the court dismissed the action for failure to join an indispensable party. Fed.R.Civ. P. 19. We affirm the dismissal of plaintiff's demand for a decree of ownership; we reserve judgment as to the accounting.

I.

A threshold problem is whether, in a diversity action, indispensability is a matter governed by state or federal law.

The Federal Rules of Civil Procedure offer no clear solution. In general, the Federal Rules dealing with joinder are not finely drawn. They derive from common law rules leavened by equity.[3]

---

1. Louisiana acquired ownership of navigable waters within its territorial limits by (a) the Swampland Grant Act, 9 Stat. 519 (1850), 43 U.S.C. § 982, and (b) the original-title-in-the-sovereign theory.

Under the Swampland Grant Act, swamp lands were given to the State of Louisiana without any restrictions as to the alienation of these lands. As such they are part of the private domain under Article 486 of the Louisiana Civil Code. See Comment, Diaz, Ownership of Bed of Navigable Waters, 30 Tul.L.Rev. 115, 118. See also Comment, the Public and Private Domains of the State, 12 Tul.L.Rev. 428 (1928).

2. L.S.A.–R.S. 47:2224 provides that the owner of tax land adjudicated to the State, and his heirs, legatees, creditors, etc., may, on payment of the requisite interest and penalty, redeem the land "as long as the title thereto is in the state or in any of its political subdivisions".

3. Mallow v. Hinde, 1827, 12 Wheat. 193, 198, 6 L.Ed. 599; Young v. Powell, 5 Cir. 1950, 179 F.2d 147 at 152; State of Washington v. United States, 9 Cir. 1936, 87 F.2d 421 at 426; 2 Barron & Holtzoff, Federal Practice and Procedure § 511 (Wright ed. 1961); 6 Cyclopedia of Federal Procedure, 457, 543–52 (3rd ed. 1951); Hazard, Indispensable Party: The Historical Origin of a Procedural Phan-

Rules 19 and 20, after a passing nod to the old common law standard, jointness of interest,[4] adopt by indirection the classification laid down by the Supreme Court in Shields v. Barrow, 1855, 17 How. 130, 147, 15 L.Ed. 158. There Justice Curtis described the "three classes of parties to a bill in equity": formal,[5] necessary, and indispensable.[6] Rule 19, dealing with "necessary joinder", refers to "persons who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties".[7]

Rule 19 gives no content to the term "indispensable". The rule is said to be merely declaratory of existing law.[8] It is questionable, however, whether Rule 19 is declaratory of federal law or of state law, or, indeed, of either.

In Hanna v. Plumer, 1965, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8, decided in April of this year, the Supreme Court discussed the relationship between the Federal Rules, the Rules Enabling Act,[9] and the Constitution. The Court distinguished between the line of cases classifying matters as substantive or procedural for the purpose of adjudicating the validity of various federal rules (Sibbach v. Wilson & Co., 1940, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479, and progeny) and the line of cases making that classification under the rule in Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58

tom, 61 Col.L.Rev. 1254 (1961); Note, Developments in the Law: Multiparty Litigation in the Federal Courts, 71 Harv.L.Rev. 879 (1958).

4. See Fink, Indispensable Parties and the Proposed Amendment to Federal Rule 19, 74 Yale L.J. 403, 408–11 (1965).

5. Formal parties are also referred to as "proper" parties. Barney v. City of Baltimore, 1867, 6 Wall. 280, 284, 18 L.Ed. 825. And some courts and commentators have referred to "formal" parties as being merely "nominal" parties, a subclassification of proper parties. See 2 Cyclopedia of Federal Procedure 382, n. 4 (3rd ed. 1951); 3 Moore, Federal Practice 2103 (2d ed. 1964).

6. In Shields v. Barrow the Supreme Court laid down a definition of indispensable parties that has persisted in both state and federal courts:
   Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. 17 How. at 147.

7. "Rule 19. Necessary Joinder of Parties
   (a) Necessary Joinder. Subject to the provisions of Rule 23 and of subdivision (b) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants. When a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff.
   (b) Effect of Failure to Join. When persons who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties, have not been made parties and are subject to the jurisdiction of the court as to both service of process and venue and can be made parties without depriving the court of jurisdiction of the parties before it, the court shall order them summoned to appear in the action. The court in its discretion may proceed in the action without making such persons parties, if its jurisdiction over them as to either service of process or venue can be acquired only by their consent or voluntary appearance or if, though they are subject to its jurisdiction, their joinder would deprive the court of jurisdiction of the parties before it; but the judgment rendered therein does not affect the rights or liabilities of absent persons.
   (c) Same: Names of Omitted Persons and Reasons for Non-Joinder to be Pleaded. In any pleading in which relief is asked, the pleader shall set forth the names, if known to him, of persons who ought to be parties if complete relief is to be accorded between those already parties, but who are not joined, and shall state why they are omitted."

8. 3 Moore, Federal Practice 2144 (2d ed. 1964); Note, Indispensable Parties in the Federal Courts, 65 Harv.L.Rev. 1050, 1051.

9. 28 U.S.C. § 2072 (1958 ed.).

S.Ct. 817, 82 L.Ed. 1188,[10] none of which, said the Court, finally required a determination of the validity of a federal rule. The Court pointed out that Congress has the *power* to regulate "matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either", 380 U.S. at 472, 85 S.Ct., at 1144, even where, in absence of an applicable federal rule or federal statute, Erie R. Co. v. Tompkins might require application of state law. A court instructed to apply a federal rule may "refuse to do so only if the Advisory Committee, [the Supreme] Court, and Congress erred in their prima facie judgment that the rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions". 380 U.S. at 471, 85 S.Ct. at 1144. The opinion does not undertake to say what, if any, difference there is between the "terms of the Enabling Act" and "constitutional restrictions"—that is, whether the Enabling Act exhausts the power of Congress to regulate practice and pleading in diversity suits. But in any event, the "uncertain area" that the Court mentions includes matters neither so clearly substantive that the Constitution requires that they be governed by state law,[11] nor so clearly procedural that the Court may regulate them simply through its inherent rule-making power.[12]

■ Hanna v. Plumer introduces a helpful double abstraction—the *choice of choice of law*. The decision makes clear that the first inquiry for a diversity court seeking the proper source of the law governing indispensability—or any other matter potentially affected by the Federal Rules—is which of the Supreme Court's two lines of decision is pertinent. Do the Federal Rules "cover" indispensability? That is, does Rule 19, by mentioning indispensability, incorporate by reference the entire body of federal indispensability precedent? The easy answer is, "No". In the first place, the text of the rule gives not the slightest clue as to the criteria that a federal court should apply in deciding who must, as opposed to who should or merely may, be joined. Second, no federal court faced with a conflict between a state indispensability rule and federal precedent has ever treated the question as one involving the validity of Rule 19. The cases, though many, are widely discrepant

10. Byrd v. Blue Ridge Rural Elec. Cooperative, Inc., 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953; Bernhardt v. Polygraphic Co., 1956, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199; Cohen v. Beneficial Indus. Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528; Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524; Ragan v. Merchants Transfer Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520; Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

11. Justice Harlan in a lucid concurring opinion suggests that there are some "arguably procedural" matters in which the Constitution nonetheless requires that state law control. 380 U.S. at 476, 85 S. Ct. at 1146.

12. The spectrum of matters potentially affected by the Federal Rules might be analyzed as follows: 1) Matters in which a federal court sitting in a diversity case is bound by the Constitution (reading article I and the tenth amendment together) to apply state law. 2) Matters that are beyond the scope of the Enabling Act, and in which the Rules of Decision Act, but not the Constitution, obliges federal courts in diversity actions to apply state law in absence of an applicable federal statute. (This category exists only if the Rules Enabling Act does not exhaust the power of Congress to regulate diversity litigation.) 3) Matters within the scope of the Enabling Act, but that the Supreme Court has not chosen to regulate, and that are so substantive that in diversity actions they must, under the Rules of Decision Act, be governed by state law in absence of an applicable federal statute. 4) Matters within the scope of the Enabling Act, and that the Supreme Court has chosen to regulate, which are controlled by the Federal Rules. 5) Matters so procedural that they may be regulated by the Supreme Court and inferior federal courts even in absence of an applicable Federal Rule.

as to which law should apply.[13] But every court that has dealt with the issue at all seems to have treated it, appropriately in our view, as a run-of-the-mine Erie problem, requiring the usual balancing of substantive and procedural elements.[14]

Unhappily, indispensability matters do not fall neatly into categories. Several factors urge application of federal law: Obviously joinder is, in a sense, always a matter of procedure, if that aging shibboleth still serves. And indispensability, while not properly regarded as a jurisdictional issue,[15] is closely related to jurisdiction,[16] and may act to defeat diversity jurisdiction. Moreover, "the concept of indispensability * * * was to a large extent self-imposed as a limitation upon federal equity jurisdiction, and there is a large body of federal indispensability precedent". Note, Developments in the Law, Multiparty Litigation in the Federal Courts, 71 Harv.L. Rev. 874, 888. Current theory, "which regards compulsory joinder as a discretionary matter, dependent on a realistic analysis of the facts of the case rather than as a matter governed by conceptual classifications of the interests of the parties",[17] lends further support to the view that federal, rather than state, law should govern.[18] 2 Barron & Holtzoff, Federal Practice and Procedure § 511 (Wright Ed. 1961). On the other hand, rules of joinder depend on the substantive rights and liabilities of the parties, present and

---

13. See cases cited in 2 Barron & Holtzoff, Federal Practice and Procedure 92–3, nn. 15 and 16 (Wright ed. 1961); 3 Moore, Federal Practice 2153, n. 11 (2d ed. 1948); Wright, Federal Courts 260, nn. 28 and 29 (1963).

14. See, for example, Resnik v. La Paz Guest Ranch, 9 Cir. 1961, 289 F.2d 814, 819; Dunham v. Robertson, 10 Cir. 1952, 198 F.2d 316, 319; Kroese v. General Steel Castings Corporation, 3 Cir. 1950, 179 F.2d 760, 761 n. 1, 15 A.L.R.2d 1117, cert. den'd 339 U.S. 983, 70 S.Ct. 1026, 94 L.Ed. 1386; Richmond Lace Works, Inc. v. Epstein, S.D.N.Y.1962, 31 F.R.D. 150, 152; Campbell v. Pacific Fruit Express Company, S.D.Idaho 1957, 148 F. Supp. 209, 211; Baker v. Dale, W.D.Mo. 1954, 123 F.Supp. 364, 367.

15. Mallow v. Hinde, supra, 12 Wheat. at 198; Reed, Compulsory Joinder of Parties, 55 Mich.L.Rev. 327, 333; Advisory Committee's Note, Preliminary Draft of Proposed Amendments to Rules of Procedure for the United States District Courts, p. 87 (March 1964).

16. Fink, Indispensable Parties and the Proposed Amendment to Federal Rule 19, 74 Yale L.J. 403, 412–22 (1965).

17. 2 Barron & Holtzoff Federal Practice and Procedure § 511 (Wright, ed. 1961).

18. The preliminary draft of the proposed amendment to Rule 19, while laying down some guidelines for determining who must be joined, preserves to the court wide discretion in deciding whether to dismiss. Interestingly, the word "indispensable" does not appear in the proposed rule. The rule would create a new classification —"contingently necessary persons". If a contingently necessary person could not be joined, the court would decide "in equity and good conscience" whether the action should proceed or be dismissed. The new rule enumerates four factors to be considered by the court:

first, to what extent a judgment rendered in the absence of the contingently necessary person might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the absence of the contingently necessary person would be adequate; fourth, whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Preliminary Draft of Proposed Amendments to Rules of Procedure for the United States District Courts, pp. 84–5.

An acute critical commentary on the proposed rule suggests that "it is not far-fetched to predict that the proposed rule might be read as dealing only with what are presently called conditionally necessary parties, leaving the concept of indispensable parties alive, but unaccounted for in the Rules," pointing to the statement by Judge Aldrich in Stevens v. Loomis, 1 Cir. 1964, 334 F.2d 775, 778, n. 7, that "The new rule omits all reference to indispensable parties, consistent with the view that what are indispensable parties is a matter of substance, not of procedure". Fink, Indispensable Parties and the Proposed Amendment to Federal Rule 19, 74 Yale

absent. In diversity actions, these substantive rights and liabilities are creatures of state law. Whenever a missing person cannot be joined, rules of indispensability are "outcome determinative", in the sense that they control whether the pending action must be dismissed. Disparities between federal and state indispensability rules, therefore, may affect primary private activity, and will necessarily encourage forum-shopping.[19]

Professor Wright characterizes the conflict in the cases as "more apparent than real": state law determines the interests of the parties; federal law determines whether these state-created interests render a missing person indispensable. Wright, Federal Courts 260 (1963). This short-hand formulation must at least be qualified insofar as it leaves room for a federal court to run afoul of Angel v. Bullington, 1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832, by entertaining diversity actions unavailable under state law.[20] Professor Wright

has recognized this caveat suggested by Judge Wyzanski in Stevens v. Loomis, D.C.Mass.1963, 223 F.Supp. 534, aff'd., 1 Cir. 1964, 334 F.2d 775. "Judge Wyzanski carefully points out the limitation that if, as a matter of substantive law, a state does not recognize that a plaintiff has a particular right of action unless he joins with him certain others, then the federal court in a diversity action is precluded from giving a plaintiff who fails to join those others an opportunity to proceed as though alone he had a substantive right." 2 Barron & Holtzoff, Federal Practice and Procedure § 511 (1964 pocket part) (Wright ed. 1961). Even under Judge Wyzanski's view, however, the mere fact that state law labels a missing person "indispensable" may not always be controlling in federal court. If, for instance, a state indispensability rule were based purely on some administrative or procedural consideration, conceivably that rule might not conclude a federal diversity action.

L.J. 403, 425 (1965). Judge Aldrich gives the draftsmen the benefit of the doubt, but his reading is hard to reconcile with the statement by the Advisory Committee that the new rule does not use the word "indispensable" because that term "has suggested some iron rule of joinder based on categorization of rights, whereas a different approach is taken in the present subdivision". Advisory Committee's Note, Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the United States District Courts, p. 91 (March 1964).

19. "Until we have an adequate theory of what the indispensable parties rule is, it is hardly possible to determine whether it is a rule of substantive law. It would seem that the indispensable parties rule is a rule of substantive law if failure to join an indispensable party goes to the court's "power to render a decree," is a "fatal error," or is, in itself, a violation of due process of law. On the other hand, if joinder requirements are merely means of adjudicating rights, and, within the confines of fairness which procedural due process always requires * * * then joinder requirements may be thought to be procedural for pur-

poses of the Rule-Making Act, and therefore subject to change by amending the Federal Rules." Fink, Indispensable Parties and the Proposed Amendment to Federal Rule 19, 74 Yale L.J. 403, 431 (1965). If indispensability were regarded as beyond the reach of the Enabling Act, it would a fortiori be a matter of substance for Erie purposes.

20. "Angel v. Bullington in its alternative ground followed the view of Guaranty Trust Co. of New York v. York * * * that for purposes of diversity jurisdiction a federal court is 'in effect, only another court of the State. * * * *' * * * The York case was premised on the theory that a right which local law creates but which it does not supply with a remedy is no right at all for purposes of enforcement in a federal court in a diversity case; that where in such cases one is barred from recovery in the state court, he should likewise be barred in the federal court. The contrary result would create discriminations against citizens of the State in favor of those authorized to invoke the diversity jurisdiction of the federal courts. It was that element of discrimination that Erie R. Co. v. Tompkins was designed to eliminate." Woods v. Interstate Realty Company, supra n. 9.

The nature and purpose of the state rule must be determined in each case.[21]

## II.

Turning now to the indispensability of a lessor as a party defendant, we hold that Louisiana law requires dismissal of the plaintiff's demand for a declaration of ownership. Louisiana law styles the action brought by Kuchenig a "petitory" action.[22] Article 3651 of the Louisiana Code of Civil Procedure describes Kuchenig's complaint precisely:

> The petitory action is one brought by a person who claims the ownership, but who is not in possession of immovable property or a real right, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership.

Comment (b) of the Official Revision Comments under article 3651 recites that the petitory action

> must be brought directly against the adverse claimant of ownership, or if there is no adverse claim, against the person in possession. There is no requirement that the action be brought against the tenant, since the latter does not possess for himself but only for his lessor.

Where, as here, there is an adverse claim of ownership, the petitory action, as a substantive right, is not available against adverse claimant's lessee alone.[23]

The Louisiana Supreme Court has made clear its view that although other relief may be had against a lessee, a claimant out of possession has no right to a decree of ownership in the absence of the adverse lessor. Walmsley v. Pan American Petroleum Corporation, 1963, 244 La. 513, 153 So.2d 375; Daigle v. Pan American Production Company, 1958, 236 La. 578, 108 So.2d 516. Each of these cases, one decided before, the other after, the present Louisiana Code of Civil Procedure became effective in 1961, involved a suit by a claimant out of possession against a lessee under a state mineral lease and the State Mineral Board. In neither action was the State itself a party. The plaintiff in Daigle sought both a declaration of ownership and cancellation of the adverse state lease. The Louisiana Supreme Court, noting that the lease had expired and that a release had been executed, held that the suit was merely a petitory action and an action to establish title, and that it could not be maintained in absence of the State itself:

> The action to establish title to real estate (LSA–R.S. 13:5062) and the petitory action which plaintiff seeks to bring against the State Mineral Board, being concerned solely with the question of title to real rights claimed for the state, the state is a necessary party, and plaintiff is without legal right or cause to maintain them as against the State Mineral Board. And it follows that as a predicate to the filing of such a suit, the authorization of the state to be sued must be obtained. 108 So.2d at 519.

---

21. Where the missing person is indispensable under federal law but not under state law, Angel v. Bullington would not preclude dismissal by the federal court. And dismissal in such a case would, arguably, do no violence to state substantive rights, because the doors of the state courts would be open to the plaintiff. On the other hand, Erie consideration aside, it is hard to see what advantage there could be in a federal court's refusing to entertain a diversity action available under state law, unless keeping the action would work some administrative hardship, or,

perhaps, unless the state joinder rule were so fundamentally unfair as to impugn the integrity of the federal forum.

22. Yiannopoulos, Real Actions in Louisiana and Comparative Law, 25 La.L.Rev. 589, 599 (1965).

23. "The action cannot be brought against the lessee alone, since, according to the substantive law, the lessee does not possess for himself but only for the lessor." Yiannopoulos, Real Actions in Louisiana and Comparative Law, 25 La.L.Rev. 589, 630 (1965).

The Court said that an action against the State Mineral Board for cancellation of a mineral lease was "not an action against the State". 108 So.2d at 519.

In Walmsley, however, the plaintiff, styling his action "one to remove a cloud from title or an action to quiet title", 153 So.2d at 376, sought only cancellation of the state lease. The defendants filed an exception of nonjoinder of an indispensable party, alleging that the suit for cancellation of the lease would necessarily involve a determination of title, and that title to the leased property was in the State, not its mineral board. The State, defendants argued, was an indispensable party under article 641 of the Louisiana Code of Civil Procedure.[24] The Supreme Court of Louisiana held that, because the plaintiffs sought merely cancellation of the lease, and not a declaration of ownership, the suit was not a petitory action, and the State was not indispensable. Before reaching that conclusion, however, the Court stated plainly the question before it:

> The issue presented is whether the State is an indispensable party. The State is an indispensable party if this is a petitory action as defendants contend. The State is not an indispensable party if this is an action to remove a cloud from title as plaintiffs contend. 153 So.2d at 377.

Two justices dissented on the ground that the complaint described a petitory action, and that the State was therefore indispensable.

The present suit is exactly what the Louisiana Supreme Court determined that the action in Walmsley was *not*. The decision in Walmsley was based on the Court's holding that the plaintiff's suit did not "have as its object that plaintiffs be declared owners". 153 So.2d at 379. Here Kuchenig asks for a judgment "decreeing plaintiff to be the owner" of the disputed property. We appreciate the plaintiff's dilemma: the missing, and indispensable, defendant may not be joined without its consent. But the law of Louisiana, which created this petitory action, dictates that it cannot proceed without, indeed that it "must be brought directly against", the State as lessor.[25] We cannot hold otherwise.[26]

### III.

Kuchenig argues that, in spite of Walmsley, Daigle, and Article 3651 of the Louisiana Code of Civil Procedure, the State is not indispensable. The asserted indispensability of the missing de-

24. Article 641 of the Louisiana Code of Civil Procedure provides:
 Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.
 No adjudication of an action can be made unless all indispensable parties are joined therein.

25. Though the question of whether a petitory action may proceed against an adverse lessee in absence of his lessor has always been regarded, by both federal and Louisiana state courts, as a matter of joinder, the language of Comment (b) under article 3651 of the Louisiana Code of Civil Procedure suggests that the defense of failure to state a claim upon which relief can be granted might also be appropriate where the lessor is omitted. Fed.R.Civ.P. 12(b).

26. Choice of law here may not be crucial. The "large body of federal equity precedent", though characterized by no great consistency, urges dismissal. In spite of their broad discretionary power, federal courts applying federal law have, in general, taken at least as strict a view of compulsory joinder in actions involving real property and royalty payments as have the Louisiana courts. See, for example, State of Louisiana v. Garfield, 1908, 211 U.S. 70, 29 S.Ct. 31, 53 L.Ed. 92; Hilton v. Atlantic Refining Co., 5 Cir. 1964, 327 F.2d 217; Ward v. Humble Oil & Refining Co., 5 Cir. 1963, 321 F.2d 775; Lawrence v. Sun Oil Co., 5 Cir. 1948, 166 F.2d 466; State of Washington v. United States, 9 Cir. 1936, 87 F.2d 421; South Penn Oil Co. v. Miller, 4 Cir. 1909, 175 F. 729; Amerada Petroleum Corp. v. Rio Oil Co., D.C.Wyo.1964, 225 F.Supp. 907; Ward v. Louisiana Wild Life and Fisheries Commission, D.C.La. 1963, 224 F.Supp. 252.

fendant rests on the State's long-standing claim to the beds of all navigable waters in Louisiana as the inalienable property of the State. Kuchenig takes the position (a) that the State's claim to the ownership of validly patented navigable water bottoms has been so severely buffeted by the Louisiana Supreme Court that it no longer amounts to a serious claim; and (b) that the State may in no event be considered indispensable to this suit, because the California Company's lease from the State does not include the property in issue. Paradoxically, Kuchenig's arguments require a decision on the merits—in advance of a trial on the merits.

A. The plaintiff's basic position is that the State cannot be considered an indispensable party because, even if the State were a party to the action, Act. 62 of 1912 (LSA–R.S. 9:5661) would bar the State from asserting title to the disputed water bottoms. This statute provides that "[a]ctions, including those by the State of Louisiana", to annul a state patent prescribe six years from the date of the issuance of the patent. A number of relatively recent decisions of the Louisiana Supreme Court, relying on Act 62 of 1912, hold that after the expiration of the six year prescriptive period the State can no longer claim property patented to private land owners, even though the property may be under a navigable body of water of great commercial importance.[27]

The appellant's argument would be sound if the State of Louisiana asserted no claim to beds of navigable waters gen-

erally or to the particular land in dispute. This is manifestly not the case, since the State claims the beds of all navigable territorial waters and California Company is in possession under a lease from the State Mineral Board. The district court found: "[I]t now clearly appears from the record that the State of Louisiana, through its official leasing agency, State Mineral Board, does claim ownership of the area on which defendant's wells were drilled".

The thrust of the plaintiff's argument is that there is no "serious dispute" as to title. Undoubtedly, in the proper case, a defendant should not be allowed to impede the progress of litigation by bringing in a stranger with a frivolous claim to title. Here, however, the integrity and dignity of a sovereign State and the State's interest in several million acres of valuable navigable waters and water bottoms tend to blunt any charge that the claim interposed is not serious. In these circumstances and at this stage of the litigation, the plaintiff totters under a back-breaking burden in attempting to persuade the Court to decide the main issue *now* by holding that the State has no serious claim to title.

The State cannot be brushed off so lightly. The State's claim rests on the codal principle[28] and public policy that navigable waters and their beds in Louisiana are "common things", owned by the State in its sovereign capacity and insusceptible of private ownership. A long line of early jurisprudence supports the State's position.[29] The Constitution of 1921 put the public policy on record—

---

27. State v. Cenac, La.App.1961, 132 So.2d 897; cert. den'd with written reasons, 1961, 241 La. 1055, 132 So.2d 928; California Company v. Price, 1954, 225 La. 706, 74 So.2d 1; Humble Oil & Refining Co. v. State Mineral Board, 1953, 223 La. 47, 64 So.2d 839; O'Brien v. State Mineral Board, 1945, 209 La. 266, 24 So.2d 470; Realty Operators v. State Mineral Board, 1942, 202 La. 398, 12 So.2d 198; State v. Sweet Lake Land & Oil Co., 1927, 164 La. 240, 113 So. 833.

28. La.Civ.Code, arts. 450, 451, 453, 482.

29. Roy, Inc. v. Board of Commissioners, 1959, 237 La. 541, 111 So.2d 765; Miami Corporation v. State, 1936, 186 La. 784, 173 So. 315; State v. Bayou Johnson Oyster Co., 1912, 130 La. 604, 58 So. 405; Burns v. Crescent Gun & Rod Club, 1906, 116 La. 1038, 41 So. 249; Zeller v. Southern Yacht Club, 1882, 34 La.Ann. 837; Milne v. Girodeau, 1838, 12 La. 324. See also Diaz, Ownership of Beds of Navigable Waters, 30 Tul.L.Rev. 115 (1955); Mayer, The Public and the Private Domains of the State, 12 Tul.L.Rev. 428, 430 (1938).

it did not create a new policy—in declaring: "Nor shall the Legislature alienate, or authorize the alienation of, the fee, of the bed of any navigable stream, lake or other body of water, except for purposes of reclamation." La.Const. of 1921, art. 4, § 2. And in 1954 the Louisiana legislature adopted a law stating that Act 62 of 1912 (contrary to the Louisiana Supreme Court's holding in California Company v. Price, 1954, 225 La. 706, 74 So.2d 1) was not intended to cure patents to the beds of navigable waters. Act 727 of 1954, LSA–R.S. 9:1107–9. Act 727 provides that all patents "heretofore or hereafter" issued purporting to convey beds of navigable waters are null and void.

The plaintiff bases his contention on a series of recent four-three decisions of the Louisiana Supreme Court rejecting the State's claim to beds of navigable waters. In 1954, in California Company v. Price, 225 La. 706, 74 So.2d 1, the Court, relying on Act 62 of 1912, confirmed a private title to over 4,000 acres of important water bottoms in Grand Bay, a navigable arm of the sea.[28] The decision affects the ownership of several million acres of other navigable water bottoms having a potential value to the State of hundreds of millions of dollars.[31] On rehearing, the Court held that bays and lakes are not "common things" under Article 482 of the Civil Code but "public things", insusceptible of private ownership only if their dedication to public use is incompatible with private ownership. Accordingly, Act 62 of 1912

cured the patent in question, because at the time the patent was issued there were no statutory or constitutional provisions prohibiting the State from alienating beds of navigable waters.

Eleven days after the Price judgment became final, the Louisiana legislature adopted Act 727 of 1954. This statute, referred to earlier, was designed to overrule Price; it specifically repealed Act 62 of 1912 insofar as the two acts are in conflict. But so far, the State has been singularly unsuccessful in achieving the legislature's objective. In a second Price suit, California Company v. Price, 1957, 234 La. 338, 99 So.2d 743, the State renewed its claim that beds of navigable waters are not susceptible of private ownership. Again by the narrowest of margins, the Louisiana Supreme Court rejected this contention. The Court held that on principles of res judicata and judicial estoppel the judgment in the earlier case was binding upon the Court. The Court ignored the Attorney General's plea that he be permitted to test the title in the light of the State's public policy as declared in Act 727 of 1954.

State v. Cenac, 1961, 241 La. 1055, 132 So.2d 928 is the latest, perhaps not the last, word on the subject. Cenac involved a patent to river lots on Bayou Terrebonne, the rear boundaries of which are the shores of Lake Barre, a navigable lake. The State raised "issues * * identical in every respect with those disposed of in the first [Price decision]." 132 So.2d at 929. Chief Justice Four-

---

30. In an earlier decision, State v. Sweet Lake Land & Oil Co., 1927, 164 La. 240, 113 So. 833, the Court held that Act 62 of 1912 barred the State from attacking a patent conveying the bed of a navigable lake. And in Humble Oil & Refining Co. v. State Mineral Board (the "Duck Lake" case), 1953, 223 La. 47, 64 So.2d 839, the Court held that Act 62 of 1912 protected a transfer of the bed of a navigable lake held by a state agency, a levee board. But see Miami Corporation v. State, 1937, 186 La. 784, 173 So. 315, where the Supreme Court overruled State v. Erwin, 1931, 173 La. 507, 138 So. 84, primarily because Erwin had departed

from the public policy of the State that declared the beds of navigable waters insusceptible of private ownership. In Price, on rehearing, the Court distinguished Miami on the ground that it dealt with erosion rather than with acquisition by a state patent; but "the rationale of Miami, that is, insusceptibility is completely inconsistent with the result in Price." Doyle, Ownership of Water Bottoms, 7 Tulane Tidelands Inst. 28, 43 (1963).

31. Doyle, Ownership of the Beds and Bottoms of Navigable Waters in Louisiana, 7 Tulane Tidelands Inst. 28, 45 (1963).

net, who had dissented strongly in the Price cases, writing for the majority in Cenac, held that "stability of titles in this state" compelled the court to follow the Price ruling. Justice Summers concurred, expressing the view that the Act of 1954 could not change the meaning of the Act of 1912. Again three of the seven justices dissented, each writing a separate opinion. The dissents rest not only on the views expressed in the Price dissents but also on Act 727 of 1954; the State should not be denied the opportunity to argue the effect of that Act. "Thus, the present status of Price is that three of the justices feel it is correct, three that it is wrong, and one has expressed no opinion. However, there are now *four* justices that agree that Price is now either an unassailable rule of property or was good law originally. Price seems relatively secure, *at least for the moment*." [32] We underscore the final clause of this conclusion, noting that the doctrine of stare decisis, in principle, is foreign to the civil law.

■ We express no opinion as to the validity of the State's claim. Nevertheless, we are impressed with the support to be found for the State's position in the Louisiana Constitution, the Civil Code,[33] and the early jurisprudence. We bear in mind too that Act 727 of 1954, although on the books at the time of Cenac and of the second *Price* decision, has never been tested as to its effect or constitutionality. In view of these considerations, we hold ·that the claim· of the State of Louisiana to the title in dispute in this case is serious and cannot be decided without the presence of the State.

■ At this stage in the litigation, it is immaterial whether Kuchenig may prevail on the merits. In determining indispensability of parties, the relief asked, not the relief granted, is the controlling factor:

> "The slightest consideration will show that if appellee were right in the view he takes, that the relief granted, rather than that asked, determines indispensability, the whole doctrine and the equitable basis on which it rests would be gone by the board." Young v. Powell, 5 Cir. 1950, 179 F.2d 147, 152.

This Court's recent decision in Hilton v. Atlantic Refining Company, 5 Cir. 1964, 327 F.2d 217, reaffirms this rule. In that case, Texas residents sued to remove an oil and gas lease as a cloud on their title. The lessee, a Pennsylvania corporation, removed the case to the federal court. The plaintiff moved to remand, contending that certain Texas residents, as royalty owners, were indispensable parties. The trial court concluded that he would decide the case against the plaintiffs. On these grounds, he held that the royalty owners were not indispensable. This Court reversed, holding that

> " * * * the district judge could not, by determining in advance that he would decide the case adverse to plaintiffs' claim, made dispensable, parties who would otherwise be indispensable."

B. Second, Kuchenig argues that California Company has not shown that its lease from the State does in fact purport to cover the property at issue, because (1) the lease excepts from its coverage "tax lands owned by the State of Louisiana" and (2) the property described by the terms of the lease is impossible to locate. If California Company is not a lessee of the State, says Kuchenig, the State is not an indispensable party. The Company answers that the property can, in fact, be located, and that the term "tax lands" refers to *uplands* only. The district court found

---

32. Doyle. See note 7. Mr. Doyle was the attorney for Price in the litigation with California Company.

33. But see Doyle at 31–33, 45.

that the State of Louisiana, through its official leasing agency, State Mineral Board, does claim ownership of the area on which defendant's wells were drilled; that it intended to lease said area to defendant and now asserts that it did so. * * *

If there is a weak link in the chain connecting California Company and the disputed mineral rights, and we do not say or imply that it is weak, it is not the lease from the State; it is the State's title. But the validity of the State's title is an issue that may not be tried "behind its back". State of Louisiana v. Garfield, 1908, 211 U.S. 70, 29 S.Ct. 31, 53 L.Ed. 92.

## IV.

It does not necessarily follow, however, that Kuchenig's prayer for an accounting stands or falls with his petitory action. Louisiana law is not clear as to whether a suit for an accounting may be maintained as an independent quasi-contractual action,[32] or whether it must always be merely incidental to some other theory. Here, if the prayer for an accounting is severable from the petitory action, the question arises whether the State is an indispensable party to the accounting. The district court did not consider these hard problems, nor have they been presented to us. We are reluctant to resolve them now, at the risk of doing violence to the law of Louisiana and putting undue strain on our own equitable muscles, especially where subsequent events may render such effort unnecessary.

■ We note that Kuchenig, pending appeal in this Court, *filed another complaint against the same defendant, in the same district court, concerning the same tract of land.* In this second complaint, however, he asked not a declaration of ownership *but damages for trespass and an accounting for all minerals wrongfully taken.* Under Louisiana law an owner not in possession has a cause of

action in tort against a trespasser. Harang v. Bowie Lumber Co., 1919, 145 La. 96, 81 So. 769. California Company moved to dismiss for failure to state a claim on which relief could be granted, and for failure to join the State Mineral Board as an indispensable party; it also sought a summary judgment on the ground that the trespass action had prescribed. The district court, in a written opinion, denied the defendant's motions, and allowed Kuchenig to amend his pleadings (1) to include an action to quiet title, and (2) to join the Mineral Board as a party defendant. (The court held the Board not immune from suit under the eleventh amendment.) Kuchenig v. California Company, E.D.La.1964, 233 F. Supp. 389.

■ The accounting *asked for* in the second Kuchenig case is the same as that sought here. However, it may be that, because of prescription, some part of the damages sought in the first suit will not be recoverable in the second, filed several months later. The length of the prescriptive period in the second action will depend on how the accounting is characterized, and perhaps, on when Kuchenig learned of the alleged trespass. These questions are now before the district court. If Kuchenig is successful in his second suit, and if the accounting there is identical with the one sought here, the question whether he may maintain the present action for an accounting independent of his petitory action, and without joining the State, will become moot. We reserve judgment, therefore, as to the accounting, retaining jurisdiction, until the termination of Kuchenig's second action.

We affirm that part of the judgment of the district court dismissing the plaintiff's prayer for a declaration of title; we reserve judgment as to the prayer for an accounting, pending the outcome of Kuchenig v. California Company, E.D. La.1964, 233 F.Supp. 389.

32. La.Civil Code, Arts. 2293 and 2294.